SWEET ET AL. *v.* SCHOCK, TREASURER OF OK-
    MULGEE COUNTY, STATE OF OKLAHOMA,
    ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF
OKLAHOMA.

No. 52.   Argued November 15, 1917.—Decided December 10, 1917.

Under the Act of April 26, 1906, § 19, c. 1876, 34 Stat. 137, and the Act
    of May 27, 1908, § 4, c. 199, 35 Stat. 312, providing that allotments
    in the Five Civilized Tribes from which restrictions on alienation
    have been removed shall be subject to taxation, land allotted to a
    Creek Freedwoman as a homestead under the Act of June 30, 1902,
    c. 1323, 32 Stat. 500, lost its tax exemption when the restrictions
    were removed by the Secretary of the Interior upon the petition of
    the allottee under the townsite provision of the Act of March 3,
    1903, c. 994, 32 Stat. 996.   *Choate* v. *Trapp,* 224 U. S. 665, dis-
    tinguished.
45 Oklahoma, 51, affirmed.

THE case is stated in the opinion.

*Mr. Francis W. Clements,* with whom *Mr. Herbert E.
Smith, Mr. Wellington Lee Merwine, Mr. John L. New-
house, Mr. Grant Foreman* and *Mr. James D. Simms* were
on the briefs, for plaintiffs in error.

*Mr. S. P. Freeling,* Attorney General of the State of
Oklahoma, with whom *Mr. Smith C. Matson* and *Mr. R. E.
Wood,* Assistant Attorneys General of the State of Okla-
homa, and *Mr. R. E. Simpson* were on the brief, for de-
fendants in error.

MR. JUSTICE McKENNA delivered the opinion of the
court.

Error to review a judgment of the Supreme Court of
Oklahoma sustaining the taxation of lands which were

allotted to a Creek freedwoman under § 16 of the Allotment Act. 32 Stat. 500, c. 1323.

The suit was instituted by plaintiffs in error in the District Court of Okmulgee County to enjoin defendant in error, as treasurer of the county, from selling the lands and placing a penalty thereon or taking any steps towards collecting the taxes.

Plaintiffs in error are the owners of certain lots in the City of Okmulgee, Oklahoma, deriving title to the same through mesne conveyance from Sarah Smith, a freedwoman and citizen of the Creek Nation, to whom the lands had been patented as a homestead.

A certain part of the lands was conveyed by Sarah Smith to one Nathan Boyd and was by him surveyed, platted and laid out in blocks, lots and streets as the Capitol Heights Addition to the City of Okmulgee, and it is now a part of that city.

The remaining portion of the homestead land Sarah Smith also caused to be surveyed, laid out and platted in lots, blocks and streets as the Capitol Heights Second Addition to the City of Okmulgee.

The county board of commissioners placed the lots upon the tax duplicates of the county and refused to remove them therefrom upon petition of plaintiffs in error, who thereupon commenced this suit. Decree was entered for plaintiffs in error, which was reversed by the Supreme Court of the State.

The land allotted to Sarah Smith and laid out in lots as described was allotted to her by deed executed April 23, 1904, under the Acts of Congress of March 1, 1901, and June 30, 1902. 31 Stat. 861; 32 Stat. 500.

By the former act it was provided that the land should "be non-taxable and inalienable and free from any incumbrance whatever for twenty-one years." By the latter act it was provided, in amendment of the other act, that the land should "be and remain non-taxable, inalienable,

and free from any incumbrance whatever for twenty-one years from the date of the deed therefor."

Both acts provided for the laying out of townsites under certain circumstances, and by the Indian Appropriation Act of March 3, 1903, 32 Stat. 996, it was enacted "that nothing herein contained shall prevent the survey and platting, at their own expense, of townsites by private parties where stations are located along the lines of railroads, nor the unrestricted alienation of lands for such purposes, when recommended by the Commission to the Five Civilized Tribes and approved by the Secretary of the Interior."

Sarah Smith availed herself of these provisions, that is, she petitioned the Commission to the Five Civilized Tribes for the removal of the restrictions against alienation for the purpose of permitting her to sell part of the land for townsite purposes. The Commission, after investigation, made a report to the Secretary of the Interior, recommending the removal of the restrictions. The Indian Office concurred in the recommendation and granted the petition and authorized her to sell the land. Thereupon (February 28, 1907) she conveyed 1.69 acres of the land by warranty deed to one Nathan Boyd, as has been said, who platted the land deeded to him in town lots, and Sarah Smith, after July 26, 1908, so platted the remainder of the land, and plaintiffs in error derive title from her and him.

The contentions of the parties are quite accurately opposed and are in short compass. Plaintiffs in error contend that when the land was allotted to Sarah Smith non-taxability was given it by a valid act of Congress and accompanied the land to her grantees, and this in consideration of the surrender by her of the rights she had in common with other members of the Creek Tribe to the tribal lands. The opposing contention is that she devested the land of non-taxability by petitioning for and accepting

a right to alienate it. A determination between the contentions depends upon certain acts of Congress in addition to those we have mentioned, and their consideration and construction therefore become necessary.

The deed allotting the land to Sarah Smith, as we have seen, provided, in accordance with the act of Congress under which it was executed, that it should "be nontaxable and inalienable . . . for twenty-one years." It will be observed that the right (non-taxability), and the restriction (inalienability) were concomitants and necessarily they concerned alone the Indian, benefited her to the extent of the right, protected her by the extent of the restriction.

Accommodation to new conditions became necessary, and Congress, by an act passed March 3, 1903, hereinabove quoted, provided for the survey and platting of townsites out of allotted lands, when recommended by the Commission to the Five Civilized Tribes and approved by the Secretary of the Interior, and permitted the "unrestricted alienation of lands for such purposes." A consequence of the exercise of the privilege so given was imposed by certain acts of Congress—(1) That of April 26, 1906, 34 Stat. 137, § 19 of which provides as follows: "That all lands upon which restrictions are removed shall be subject to taxation, and the other lands shall be exempt from taxation as long as the title remains in the original allottee." (2) That of May 27, 1908, 35 Stat. 312, § 4 of which reads as follows: "That all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes; . . ."

It was after the passage of the Act of April 26, 1906, that Sarah Smith petitioned for the removal of the restrictions upon her homestead, that is, its alienation for townsite purposes, and conveyed to Boyd; and it was

after the passage of the Act of May 27, 1908, that she platted the land as stated. She and her grantees must, therefore, be deemed to have accepted the consequences of her acts, to-wit, that the land thereafter should be subject to taxation. And this is not taking from her or them a vested right; it is simply enforcing against her and them the results of a bargain, and, it may be presumed, a beneficial bargain.

The contention of plaintiffs in error overlooks the fact that the Commission to the Five Civilized Tribes and the Secretary of the Interior are instruments of the Government, delegated, it is true, to extend a privilege, but bound, in extending it, by the laws of the United States; that is, that they in granting it and Sarah Smith in accepting it did so under the conditions imposed by those laws; and *Choate* v. *Trapp*, 224 U. S. 665, is not opposed.

In that case it was decided that an Indian of one of the Five Civilized Tribes had an equitable interest in tribal lands which when given up constituted a consideration for his allotment and its exemption from taxation, and a law of the State of Oklahoma taxing the allotment while in possession of the Indians was declared invalid.

The acts of Congress, confirming previous agreements, provided that the lands allotted should be non-taxable while the title remained in the original allottee and provided for alienation within certain periods. The State argued nevertheless that there was in fact no tax exemption but that the provision for it was but an additional prohibition against a forced sale,[1] and that when restrictions against alienation were removed by the Act of Congress of 1908 (35 Stat. 312) the provision for tax exemption went as a necessary part thereof. The contention was rejected, and rightly so, and, as was aptly said by Mr.

[1] Section 16 of the Allotment Act (32 Stat. 500) contains a prohibition of any incumbrance or sale of allotted lands in satisfaction of any debt or obligation of the allottee.

Justice Lamar, speaking for the court: "The exemption and non-alienability were two separate and distinct subjects. One conferred a right and the other imposed a limitation." Under the circumstances it was a complete answer to the attempt which was made to make the right depend upon the limitation. And that, too, without the removal of the limitation being availed of by the Indian. As we have seen, to have availed himself of it would have relinquished the right, for by the express provision of the statute it only existed while the title remained in him.

The elements are different in the case at bar. Sarah Smith invoked a removal of the limitation, the restriction upon alienation, and could only receive the benefit of the law by accepting the consequences of the law. It would indeed have been anomalous to give her power to erect a town and convey its lots free from taxation.

*New Jersey* v. *Wilson*, 7 Cranch, 164, is adduced by plaintiffs in error to sustain their contention. That case passed upon a grant of the State of New Jersey to certain Indians, "with the privilege of exemption from taxation." It was decided that the privilege, though for the benefit of the Indians, was annexed by the terms which created it to the land itself, not to their persons. And this was an advantage to the Indians, it was said, "because, in the event of sale, on which alone the question could become material, the value would be enhanced by it." But it was further said it was not doubted that the State might have insisted on a surrender of the privilege as the sole condition on which a sale of the property should be allowed. Such condition is imposed by the acts of Congress which we have mentioned, when voluntarily invoked by an allottee. And there is no hardship in this. The right or privilege of exemption from taxation cannot be taken from an allottee's land while he retains the title. Its surrender may not be forced from him, but he may yield it in bargain for another right or privilege; and any

improvident estimate of the right to be given up or to be received is guarded against by the requirement of the approval by the Commission to the Five Civilized Tribes and the Secretary of the Interior. And it can easily be seen that if exemption from taxation gave value to the land, the power to constitute towns was of greater value. The record shows the value of the lots to plaintiffs in error in the erected town, ranging from $25 to $1700, a number being valued at $100, others at $200, $300, $400, and $1500. We may observe that Sarah Smith was authorized to sell for not less than $125 an acre.

*Judgment affirmed.*