SHULL, APPELLANT, *v.* LEWIS AND CLARK COUNTY, RESPONDENT.

(No. 6,985.)

(Submitted January 28, 1933. Decided February 7, 1933.)

[19 Pac. (2d) 901.]

410

Mr. *Wellington D. Rankin* and Mr. *Arthur P. Acher*, for Appellant, submitted a brief; Mr. *Acher* and Mr. *Leo J. Kottas*, of Counsel, argued the cause orally.

412

*Mr. George E. Hurd,* for Respondent, George Edwards, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought to set aside a tax deed issued to defendant county on October 31, 1929, pursuant to a sale for delinquent taxes assessed in the year 1925, and to annul a contract of sale made by the county to defendant George Edwards.

The substance of the complaint need not be alluded to further than to say that the relief sought is grounded upon irregularities in the proceedings resulting in the issuance of the tax deed. No attack is made upon the validity of the assessment. The county made no answer to the complaint. Defendant Edwards answered. After the issues were joined by a reply, defendant Edwards filed an affidavit, pursuant to Chapter 85, Laws of 1927, in which he set forth that the amount of the taxes, penalty and interest which would have accrued at the time the affidavit was filed, if the property involved had been regularly and legally assessed, was the sum of $908.94; that on April 5, 1930, and after the county had acquired the tax deed, he purchased the property from the county for the sum of $524.94 to be paid in installments; that $262.97 was paid at the time of the purchase, and the balance was to be paid in two equal installments; and that, since the purchase of the land, he expended $2,559 for improvements while he was in possession thereof. He asked for an order of the court directing plaintiff to deposit in court these sums to his use or to show cause why she should not. The requested order to show cause was made. After hearing, the court, on July 15, 1931, made an order that plaintiff deposit, on or before July 31, the sum of $925.63, the amount of all taxes, interest and penalties which would have accrued up to that time if the property had been regularly and legally assessed, and the additional sum of $2,289.10, the amount found to have been reasonably paid by defendant Edwards in preserving and improving the property. Plaintiff did not make the deposit within the time specified, and on

August 3 her default for failure so to do was entered. On August 4 judgment was entered quieting title in defendant Edwards, and awarding him costs. The appeal is from the judgment.

The question presented by the appeal is whether Chapter 85, Laws of 1927, is valid so far as it requires a deposit to be made to the use of the purchaser from the county.

We have heretofore upheld the statute so far as it requires a deposit of the taxes, penalty and interest, for the use of the county. (*State ex rel. Souders* v. *District Court*, 92 Mont. 272, 12 Pac. (2d) 852.) In considering the question here presented, it becomes important to ascertain what would become of the deposit in case it were made under facts such as we have before us.

Chapter 85 amends sections 2214, 2215 and 2235, Revised Codes of 1921. Before amendment, section 2214 made no provision for requiring a deposit. By the amendment (Chap. 85, Laws of 1927), it is provided that, in an action to set aside a deed to property sold for delinquent taxes, "the purchaser or his successor upon filing an affidavit may obtain from the court an order directed to the person claiming to own the property, * * * commanding him to deposit in court, to the use of the tax purchaser or his successors, the amount of all taxes, interest and penalties which would have accrued if said property had been regularly and legally assessed and taxed," together with all sums reasonably paid in preserving the property and in making improvements thereon while in possession thereof. The Chapter provides that, if the original owner shall not be successful in the action, the money deposited shall be returned to him; and, if he is successful, the amount deposited "shall be paid to the purchaser or his successors."

Section 2215, as amended by Chapter 85, provides that the tax deed shall "convey to the grantee the absolute title to the lands, * * * including all the right, title, interest, estate, lien, claim and demand of the State of Montana, and of the county, in and to said real estate, and including the right of,

if said tax deed or sale, or any of the tax proceedings upon which said deed may be based, shall be attacked and held irregular or void, to recover the unpaid taxes, interest and penalties which would accrue if said tax proceedings had been regular and it was desired to redeem said property.'' The above-quoted paragraph, as well as others not material in this proceeding, were inserted in section 2215 by way of amendment by Chapter 85.

Also, by the amendment of section 2235, the board of county commissioners was authorized to sell property acquired by it for delinquent taxes, on the installment plan. As amended, the section contained a validating clause confirming in the purchasers from the county ''all the right, title, interest, estate, lien, claim and demand of the State of Montana, and of the county, in and to said real estate, including the right to recover unpaid taxes, interest and penalties if the tax sale or any of the tax proceedings or tax deed shall be attached [attacked?] and held irregular or void.'' The further amendment (Chap. 162, Laws of 1929) is of like import, except that it purports to authorize the county to sell such property to the highest bidder.

In consequence, when property had been struck off to the county at a delinquent tax sale and the county had become the holder of the tax deed, under Chapter 85 it could sell the property for whatever sum the board of county commissioners determined was the fair market value, and, under Chapter 162, it could sell to the highest bidder. It was the legislative plan under Chapter 85 that the purchaser from the county should obtain all the rights of the county in the property, including the right to recover the unpaid taxes, interest and penalties in case the tax deed or tax sale should be set aside. It is also clear that the legislature intended that such purchaser from the county should have the right to the deposit required to be made under Chapter 85 in the event that the tax deed be set aside.

As applied to lands situated in an irrigation district having outstanding bonds, Chapter 162 has been held invalid so far

as it permits the sale to the highest bidder without reference to the market value of the land. (*State ex rel. Malott* v. *Board of Commrs.*, 89 Mont. 37, 296 Pac. 1.) The question whether the Act was valid as to other lands was expressly reserved in that case.

The question whether the Act is valid as permitting a sale of property acquired by the county at a tax sale for less than the market value, where there has been no attack upon the tax deed, is not involved here.

Chapter 85, as well as Chapter 162, so far as they purport to authorize the county to relinquish to the purchaser of lands acquired by it for delinquent taxes, all claims and demands for unpaid taxes, interest, and penalty, upon a successful attack on the tax deed, are in conflict with section 39 of Article V of the Constitution, which provides: "No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury." (Compare *Sanderson* v. *Bateman,* 78 Mont. 235, 253 Pac. 1100.)

Since the statute, so far as it attempts to give to the purchaser of lands from the county the right to recover all delinquent taxes, interest and penalty, regardless of the amount he may have paid to the county, upon the original owner successfully attacking the tax deed, is unconstitutional, it does not measure the rights of the purchaser in such a case.

It follows that, if plaintiff here can maintain her action and is successful in setting the tax deed aside, the result would be that defendant Edwards would simply be entitled to receive that which he paid to the county, with interest from the date of payment, together with expenditures reasonably made by him for preserving and improving the property, but would not be entitled to the balance of the tax, penalty and interest; such balance would belong to the county,

if the tax proceedings be set aside. In consequence, the only amount that Edwards may demand to be deposited in court is that which he would be entitled to receive in the event the tax deed be set aside.

The county might have demanded that plaintiff deposit that to which it would be entitled in the event the tax deed be set aside; but this it did not do; it suffered the case to go by default. Of course, plaintiff, before having the property restored to her by decree of court, must also pay to the county its part of the tax, penalty, and interest. She has alleged her readiness and willingness to do this.

There being no demand upon the part of the county that the sum which would be due to it upon the deed being set aside be deposited in court in advance of the trial, it was error to include that amount in the sum required to be deposited.

We are aware that plaintiff might have made the deposit ██ and still have questioned the amount upon appeal from the judgment. (*Tilden* v. *Chouteau County,* 85 Mont. 398, 279 Pac. 231.) But that was not her exclusive remedy. Where, as here, the order requiring a deposit embraced items which the party demanding the deposit had no right to receive in the event the tax proceedings be set aside, plaintiff may decline to make the deposit and raise the question on an appeal from the judgment entered for default in so doing.

Chapter 85, so far as it requires plaintiff to make a deposit of that which the party making the affidavit would be entitled to receive upon the tax proceedings being set aside, is valid under the rules announced in *State ex rel. Souders* v. *District Court,* supra.

Plaintiff contends that there was error in finding the amount ██ of sums reasonably paid by defendant Edwards for preserving and improving the property. Since the evidence submitted by plaintiff at the hearing is not before us, we are unable to say whether there was error in this respect. It is sufficient to say that the evidence offered by defendant Edwards made out a prima facie case warranting the order as made fixing the amount expended for improvements.

A question of practice deserves consideration. As above noted, the order requiring the deposit was made on July 15, 1931. On July 24 written notice dated July 20 was served upon plaintiff's counsel by counsel for defendant Edwards. The judgment quieting title in Edwards was entered on August 4. On August 8 Edwards filed his memorandum of costs and disbursements. It is the contention of plaintiff that the cost bill was not filed within five days after "notice of the decision of the court," within the meaning of section 9803, Revised Codes of 1921.

Section 9803 provides that "the party in whose favor judgment is rendered, and who claims his costs, must deliver to the clerk, and serve upon the adverse party, within five days after the verdict or notice of the decision of the court or referee or, if the entry of the judgment on the verdict or decision be stayed, then before such entry is made, a memorandum of the items of his costs and necessary disbursements in the action or proceeding, which memorandum must be verified by the oath of the party, or his attorney or agent, or by the clerk of his attorney, stating that to the best of his knowledge and belief the items are correct, and that the disbursements have been necessarily incurred in the action or proceeding. A party dissatisfied with the costs claimed may, within five days after notice of filing of the bill of costs, file and serve a notice of a motion to have the same taxed by the court in which the judgment was rendered, or by the judge thereof at chambers."

The phrase "notice of the decision of the court," as used in the above section, means notice of such a decision as amounts to a rendition of judgment. This is apparent from the first line of the section. Also the last sentence in the section bears evidence that such is the meaning of the statute. The order requiring the deposit is not an order amounting to the rendition of a judgment. It is simply the determination of an intermediate question arising in the main action. (*Tilden* v. *Chouteau County,* supra.) The cost bill was filed in time.

Since it was error to include in the order requiring the deposit an item in which the defendant Edwards had no right or interest, the judgment entered against plaintiff for failure to make the deposit cannot stand.

The judgment is reversed and the cause remanded, with direction to modify the order by eliminating therefrom such sums as must be paid to the county in the event the plaintiff prevails in her action. Reasonable time should be afforded plaintiff to make the deposit under the order as thus modified. Plaintiff shall recover her costs on this appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

---

### ON MOTION FOR REHEARING.

(Filed March 15, 1933.)

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

On motion for rehearing, it is contended by defendant Edwards that the decision of this court does not permit the purchaser from the county to recover or require the deposit of taxes and installments of the purchase price paid by him after the purchase. This result does not follow. Taxes paid subsequently to the purchase from the county are a proper item to be taken into consideration in computing the expenditures made to preserve the property. All installment payments made are to be taken into account in determining the amount paid by the purchaser to the county. If any such payments have been made since the making of the order of the court requiring the deposit, the court, upon being advised of that fact, should include such sums in the order.

The suggestion is also made that the county, by not appearing in the action and requiring a deposit, in effect postpones and possibly remits the payment of taxes contrary to

section 39, Article V, of the Constitution. There is no merit in this contention, for the court in the final decree may protect the rights of the county. (*Wright* v. *Brooks*, 47 Mont. 99, 130 Pac. 968; *Larson* v. *Peppard*, 38 Mont. 128, 99 Pac. 136, 129 Am. St. Rep. 630, 16 Ann. Cas. 800.) All that the county has waived is the right to demand that its share of delinquent taxes, penalties and interest be deposited in court as security, as a condition to plaintiff's right to maintain her action.

Rehearing denied.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.