**KEELER et al. v. WYNN, County Treas., et al.**

No. 23707. March 10, 1936.

P. A. Sompayrac and Campbell & Ray, for plaintiffs in error.

Shipman & Lewis, for the City of Bartlesville.

Elcock & Martin, for the Farmers State Bank, the Farmers & Bankers Life Insurance Company, the Brown-Crummer Investment Company, and R. B. Earp.

Holliman, Bailey & Brewer, for Reed & Wheelock.

GIBSON, J. George B. Keeler was a member of the Cherokee Nation and received as his homestead allotment a certain tract of land near the city of Bartlesville. Subsequent to the removal of restrictions on the alienation of said homestead by the Act of Congress of May 27, 1908, Keeler platted a portion of said allotment as Keeler's Third addition to the city of Bartlesville. Thereafter, the addition was duly taken into the corporate limits of the city. Paving and sewer districts were created and the improvements made in said addition. Several years thereafter Keeler died possessed of certain unsold lots upon which special assessments for the above-mentioned improvements had been made by the city, and unpaid by Keeler. This suit was commenced in the district court of Washington county by his heirs and administrators against the county treasurer, the city, and others to enjoin the collection of said assessments for the years prior to Keeler's death. The trial court denied the petition, and plaintiffs have appealed.

Exemption of the property from special improvement assessments is claimed under the provisions of the Act of Congress of July 1, 1902 (32 Stat. 717), and ratified by the Cherokee Nation August 7, 1902. The particular portion of the act here to be considered is section 13 thereof, and reads as follows:

"Each member of said tribe shall, at the

time of the selection of his allotment, designate as a homestead out of said allotment land equal in value to forty acres of the average allottable lands of the Cherokee Nation, as nearly as may be, which shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of the certificate of allotment. Separate certificate shall issue for said homestead. During the time said homestead is held by the allottee the same shall be nontaxable and shall not be liable for any debt contracted by the owner thereof while so held by him."

The right to tax exemptions as expressed in the acts of Congress and treaties with the Indian tribes located in Oklahoma was reserved to the Indian by section 1 of the Enabling Act and ratified by the state in section ·6, art. 10, of the Constitution. Such exemption became a vested right in each individual allottee (Choate v. Trapp, 224 U. S. 665, 32 S. C. 565, 56 L. Ed. 941); and included exemption from assessment for public improvements. Grotkop v. Stuckey, 140 Okla. 178, 282 P. 611; Board of Commissioners v. Dennis, 140 Okla. 204, 282 P. 457.

It is conceded here that the allottee may not be deprived of his vested right to tax exemption by legislative act, but it is contended that he may waive or bargain away such right, and that the allottee, Keeler, did so waive or bargain away his exemption in this case. This contention, the defendants say, is sustained by the decisions in Sweet v. Schock, 245 U. S. 192, 62 L. Ed. 237, and Grotkop v. Stuckey, supra.

In the Sweet Case the Supreme Court held that the sale by a Creek citizen of her homestead allotment for town-site purposes after removal of restrictions on alienation by the Secretary of the Interior for that particular purpose under authority of the Indian Appropriations Act of March 3, 1903, (32 Stat. 982), destroyed the tax exemption on the land in the hands of her grantees. There the court said:

"Sarah Smith invoked a removal of the limitation, the restriction upon alienation, and could only receive the benefit of the law by accepting the consequences of the law. It would indeed have been anomalous to give her the power to erect a town and convey its lots free from taxation."

Then the court concluded as follows:

"* * * The right or privilege of exemption from taxation cannot be taken from an allottee's land while he retains the title. Its surrender may not be forced from him, but he may yield it in bargain for another right or privilege; and any improvident estimate of the right to be given up or to be received is guarded against by the requirement of the approval by the Commission to the Five Civilized Tribes and the Secretary of the Interior. And it can easily be seen that if exemption from taxation gave value to the land, the power to constitute towns was of greater value. The record shows the value of the lots to plaintiffs in error in the erected town, ranging from $25 to $1,700, a number being valued at $100, others at $200, $300, $400, $1,500. We may observe that Sarah Smith was authorized to sell for not less than $125 an acre."

The foregoing statement of the Supreme Court is tantamount to a holding that the allottee may yield the exemption while retaining title to the allotment. The statement was no doubt prompted entirely from the court's interpretation of the Act of Congress of March 3, 1903, in connection with the Act of Congress of April 26, 1906, sec. 19 (34 Stat. 144), wherein it is provided:

"That all lands upon which restrictions are removed shall be subject to taxation, and other lands shall be exempt from taxation as long as the title remains in the original allottee."

The Act of May 27, 1908, contains a somewhat similar provision. The court said in effect that by seeking the benefit of the law and procuring the removal of restrictions under the Act of 1903, the allottee must accept the consequences of the law of 1906 allowing all lands from which restrictions had been removed to be taxed, and in view of the anomalous situation that would result from creating a town without taxation, release of the exemption by the allottee in exchange for the more valuable privilege of erecting a town was within the contemp'ation of the Act of 1903.

In that case the restrictions upon alienation had not been unconditionally removed. To obtain removal, the allottee was compelled to make app'ication therefor, and for the one purpose only of erecting a town. Here the restrictions were unconditionally removed by the Act of Congress of May 27, 1908, without assent or application on the part of the allottee; and the tax exemption remained a vested right in him. At the time the addition in the present case was platted Keeler was not compelled to obtain the consent of anyone, and there was no law requiring him to abandon or bargain away a vested right for the privilege of creating the addition.

In Grotkop v. Stuckey, the facts were in many respects similar to the facts in the instant case. We believe that upon close

comparison that case should be decisive of the questions here involved. There, as here, it was contended that a Cherokee allottee had bargained away her exemption within the meaning of the opinion in Sweet v. Schock in exchange for the added value to the land arising from public improvements and city protection and advantages. This court held the decision in the Sweet Case not applicable by reason of the distinction hereinabove pointed out. The court there said, speaking of the allottee: "She surrendered nothing, nor was she required to surrender anything, in order to secure removal of restrictions." That statement well applies in the instant case.

We hold, therefore, that Keeler did not bargain away his exemption from special tax assessments in exchange for the benefits gained by the special improvements.

It is contended that Keeler waived his exemption by standing by and accepting the benefits of the special improvements without objection. It is said that this fact distinguishes this case from the Grotkop Case for the reason that the allottee there made every possible objection to the improvements. There is some evidence here that Keeler objected to the payment of the assessments, but little evidence that he objected to the improvements. This question is decided adversely to the contention of defendants by the third paragraph of the syllabus in the Grotkop Case, as follows:

"The object and purpose of the provision against liability of the homestead allotment of members of the Cherokee Tribe of Indians from debts contracted by the owner thereof while so held by the allottee, was to prevent forced sale of the homestead allotment, and the protection extends to forced sales of all kinds, including sales for special improvement assessments."

By virtue of the Act of July 1, 1902, the homestead allotment of a Cherokee citizen could not be taken to satisfy a debt voluntarily contracted by the allottee. It follows of necessity that had Keeler voluntarily contracted for these improvements, he could at his pleasure repudiate the debt so created in so far as the same affected his allotment. In view of the act of Congress, Keeler's homestead allotment could not be taken to satisfy any debt or obligation. A contrary holding would be in effect an attempt to render section 13 of the act inoperative and would be contrary to the plain intent and purpose of the acts of Congress and section 6, art. 10, of the State Constitution.

After due consideration of the Act of July 1, 1902, we are drawn to the conclusion that the tax exemption created by section 13 thereof could not be extinguished by any act of the allottee short of alienation of the premises or by the death of the allottee. Keeler having retained title to that portion of the premises here involved until his death, the exemption from debt and taxation remained intact until that time, and the lands descended to his heirs free from any such encumbrances.

There is a question of res adjudicata raised by defendants in this case. Keeler and other property owners in the addition commenced suit in district court challenging the validity of the proceedings of the city leading up to the construction of some of the improvements here in question; they sought cancellation of the contract between the city and the parties constructing the improvements and an injunction restraining the parties from issuing tax warrants for such improvements against the lots in the district. They asked also that the court determine the benefit accruing to each lot from the work already done and to assess the lots accordingly.

Defendants say Keeler, if he was to claim exemption for his lots, should have litigated the matter in that action, which has now gone to final judgment. We cannot agree with this contention. Keeler's claim of tax exemption would have been foreign to the issues in that case. His claim could have had no bearing on the question of the legality of the aforesaid proceedings and the contract. An examination of the record discloses that the action did not result in equitable assessments of the lots, but the proceedings of the city were upheld.

Defendants say that Keeler, by seeking equitable assessment of his property in that action, waived his claim of exemption. That act, at most, was a mere voluntary attempt to recognize a debt, and was subject to repudiation by him or his heirs in so far as the debt would result in a lien upon his allotment.

We conclude that Keeler did not dispose of his vested right of tax and debt exemption for his homestead allotment. The judgment of the trial court to the contrary is against the clear weight of the evidence. In such case, being an equitable action, this court may render, or cause to be rendered, such judgment as should have been rendered at the trial. The judgment is therefore reversed and the cause remanded, with directions to enter judgment for the plaintiffs.

OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, PHELPS, and CORN, JJ., concur. McNEILL, C. J., and WELCH, J., absent.