GLACIER COUNTY, ET AL., RESPONDENTS, v. FRISBEE, ET AL., APPELLANTS.

No. 8481

Submitted March 1, 1945. Decided June 28, 1945.

164 Pac. (2d) 171

Mr. S. J. Rigney, of Cut Bank, for appellant.

Mr. Lloyd A. Murrills, of Cut Bank, for respondents.

MR. CHIEF JUSTICE JOHNSON, delivered the opinion of the court.

Plaintiffs Glacier county and Francis E. Manley, having prevailed in the district court in an action to quiet the title to certain land, Florence Samples Hall, the only answering defendant, has appealed from the decree so far as it relates to 160 acres of the land. Plaintiff Glacier county claims title through a tax deed dated December 15, 1927, purporting to divest appellant's title, and plaintiff Manley through a contract of sale thereof by the county dated July 16, 1941.

Defendants' answer constitutes in effect a general denial fol-

lowed by affirmative defenses and cross-complaints to the effect: (1) that defendant is a member of the Blackfeet Tribe of Indians and a ward of the government, and that this land is part of 320 acres allotted to her by trust patent in 1918 under which the United States agreed to hold the same for a trust period of 25 years and at the expiration thereof to "convey the same by patent to said Indian in fee, discharged of federal trust and free from all charge and encumbrance whatsoever"; that during the same year the United States issued her a patent in fee for the land without her application or consent and against her will; that the patent was void, the land not subject to tax, and the taxes and tax deed void; (2) that the tax deed was further void because of certain pleaded defects in the notice of application therefor and in the service of the notice.

Plaintiff demurred to the separate defenses and cross-complaints, but the demurrer was never disposed of and no reply was ever filed. This was because of proceedings under section 2214, Revised Codes, hereinafter discussed, resulting in an order requiring defendant to deposit $553.93 in court, her failure to do so, the consequent entry of her default, and the rendering of judgment upon plaintiff's showing. Section 2214 provides that orders made under it may be reviewed on appeal from the judgment.

If the court's order was for any reason erroneous, defendant's default was improperly entered, the judgment and decree must be reversed, and the cause must be remanded so that defendant's default can be vacated and further proceedings had.

Section 2214 provides in part: "* * * provided further that in any action now pending, or hereafter brought to set aside or annul any tax deed, or to quiet title, or to determine the rights of such purchaser, including the county, or his successors, to real property claimed to have been acquired by reason of tax proceedings or a tax sale, the purchaser or his successor *upon filing an affidavit* may obtain from the court an order directed to the person claiming to own the property, or to have any interest in or lien upon said property, or a right to redeem the

same, or claiming rights hostile to the tax title (which said person is herein, for convenience, called the true owner), commanding him to deposit in court, to the use of the tax purchaser or his successors, the amount of all taxes, interest and penalties which would have accrued if said property had been regularly and legally assessed and taxed as the property of said true owner and sold for delinquent taxes and was about to be redeemed by him, and the amount of all sums reasonably paid hereafter by said purchaser or his successors after three years from the date of said tax sale in preserving said property or in making improvements thereon while in possession thereof, *as the total amount of said taxes, interest, penalties and improvements is alleged by the plaintiff* and shall appear in said order, or to show cause on a date to be fixed in said order, not exceeding thirty days from the date thereof, why such payments should not be made. * * * Upon the hearing of the order to show cause the court shall have jurisdiction to determine said amount and to make an order that the same be paid into court within a given time, not exceeding thirty days after the making of said order. If such amount, when so determined, shall not be paid within the time fixed by said court, then said true owner shall be deemed to have waived any defects in the tax proceedings and any right of redemption, and thereupon, irrespective of any irregularities, defects or omissions or total failure to observe any of the provisions of the statutes of Montana regarding the assessment, levying of taxes, or sale of property for taxes, and the giving of notices, including notices of redemption, or concerning tax deeds, whether or not such omissions or failures make said proceedings void (other than that the taxes were not delinquent or have been paid), the title of such true owner shall not be quiet as against said purchaser or his successors, and a decree shall be entered in said action quieting the title of said purchaser or his successor as against said true owner. If such payment shall be made into court, and said true owner shall be successful in said action and said tax proceeding shall be held void, said sum shall be paid to the purchaser or his

successors. If said true owner shall not be successful in said action and the title of said purchaser or his successors shall be sustained, said money shall be returned to said true owner. * * *''

The proceedings under section 2214 were initiated by the affidavit of plaintiff Manley which recited that title to the property had been acquired by Glacier county through tax deed proceedings; that it was being acquired by him under contract of purchase from the county; that under the contract he paid Glacier county $94.50 on September 16, 1941, and $90.72 on October 2, 1942; that in addition on November 23, 1942, he paid the county the taxes legally assessed against the property for the year 1942, amounting to $8.71, and ''that Plaintiff and Affiant has reasonably paid the sum of $360.00 after three years from the date of said tax sale in preserving said property and in making improvements thereon while in possession thereof, which said improvements consist of breaking, plowing, double discing, and harrowing a portion of said lands preparatory to seeding the same.''

The affidavit included no statement of either the amount of taxes, interest and penalties actually accrued or ''the amount of all taxes, interest and penalties which would have accrued if said property had been regularly and legally assessed and taxed as the property of said true owner and sold for delinquent taxes and was about to be redeemed by him,'' as required by section 2214.

Defendant filed a motion to quash the order to show cause issued upon the affidavit. This motion was apparently overruled as some three weeks later the defendant filed an answer to the same order in which she again set up the matters alleged in her affirmative defenses and cross-complaints, together with further objections to the sufficiency of the tax deed proceedings, and also resisted Manley's claim of $360 for improvements and his contention that the land was improved thereby.

At the hearing upon the order to show cause it was established that defendant is a member of the Blackfeet Tribe and a ward

of the government; that the land in question is in the Blackfeet Indian Reservation and constituted part of her original allotment; that trust and fee patents were issued in 1918 as alleged in her answer; that she made no application for the fee patent; that in 1920 she conveyed 80 acres of the allotted land to her stepfather by warranty deed reciting a consideration of $800 and bearing $1 in revenue stamps. Plaintiff Manley testified as to the two payments made by him to the county on the contract, and the payment of taxes in 1942, and the work done by him on the land.

Manley's showing concerning the $360 claimed in his affidavit for the preservation and improvement of the property was limited to his testimony that he "strip broke eighty acres and summerfallowed the same amount" and that "the breaking and working down *is worth* $360.00." There was no showing of the taxes, penalties and interest accrued upon the land or "which would have accrued if said property had been regularly and legally assessed and taxed" during the entire period after the first tax delinquency, nor were the various annual assessments or tax levies shown for those years.

After the hearing upon the order to show cause, the court rendered a "memorandum opinion" reciting that the trust patent for the 320 acres issued on February 28, 1918, and fee patent issued to defendant on June 11, 1918, which was recorded in the office of the county clerk and recorder of Glacier county on February 10, 1920; that the fee patent was issued to her without her application, but that on January 12, 1920, she conveyed eighty acres thereof (not part of the 160 acres here involved) to her stepfather James A. Perrine by warranty deed, which was recorded on February 10, 1920; that the tax deed to the land in question was issued to the county on December 15, 1927, for a named consideration of $359.80; that the county sold the land to plaintiff Manley on September 16, 1941; that the law was that a patent in fee simple was void when granted to an Indian of the Blackfeet Tribe without the patentee's application or consent; but that "the allottee, Florence Samples

584

Hall by deeding eighty acres of the land covered by the fee simple patent by warranty deed to the grantee, James A. Perrine, consented to the issuance of said patent in fee simple, and that therefore she cannot contend at this time that the title to the land involved is still held under the terms of the trust patent issued by the United States of America to her in the first instance.''

The memorandum opinion reserved all questions concerning the tax deed proceedings for consideration at the trial upon the merits. An order was subsequently made for the deposit in court by defendant of $553.93 to cover the $185.22 paid by Manley to the county under the contract, the $8.71 paid by him as taxes for the year 1942, and the $360 claimed by him for improvements. The procedure under section 2214 must be held invalid on account of the insufficiency of the affidavit upon which it was based.

While it has been held that an individual plaintiff is not entitled on his own behalf to require that the deposit exceed the amount which he is entitled to receive if the title is quieted as against him (Shull v. Lewis & Clark County, 93 Mont. 408, 19 Pac. (2d) 901), the affidavit is jurisdictional and must set forth the matters required by the statute; for the remedy is purely statutory and the proceedings must therefor conform fully to the statutory requirements. Gillespie v. Dion, 18 Mont. 183, 44 Pac. 954, 959, 33 L. R. A. 703; Page v. New York Realty Co., 59 Mont. 305, 196 Pac. 871; 59 C. J. 1110, sec. 657; 50 Am. Jur. 44, sec. 22. Furthermore, while Manley is not entitled to receive out of the deposit more than the amount expended by him upon the property in the manners specified in the statute, his right aside from the expenses for preservation and improvement of the property is further limited by the statutory limitation to ''the amount of all. taxes, interest and penalties which would have accrued if said property had been regularly and legally assessed.'' Obviously the purpose of the statute is in part to protect the public revenue in cases in which the property is held for some time in the name of the county, during which,

of course, no taxes are assessed or levied. While it was held in Shull v. Lewis & Clark County, supra, that any such tax amounts in excess of the purchaser's investment could not constitutionally go to other than the county itself, it does not follow that such amounts need not be stated in the jurisdictional affidavit or that they may not be payable to the county as a party or intervener in the action.

We therefore conclude that the affidavit was insufficient to confer jurisdiction upon the court to make any order requiring defendant to deposit money as a prerequisite to being heard in the action, in that it failed to show "the amount of all taxes, interest and penalties which would have accrued if said property had been regularly and legally assessed." The defect is not that the amount was misstated, but that it was not stated at all. Since the insufficiency of the affidavit necessitates a reversal of the judgment, it is necessary to dispose of other questions of law involved in this case, presented upon this appeal, and necessary to the final determination of the case. Sec. 8805, Revised Codes. These include other questions presented by the proceedings under section 2214, since it is entirely possible that a sufficient affidavit may be filed for further proceedings thereunder.

For convenience we shall first consider the evidence relating to the proper amount of the deposit. It is apparent from the above outline of that evidence that the court had no way of determining whether the amount paid by plaintiff Manley as taxes and contract payments did or did not exceed the maximum demandable of defendant under the statute on account of taxes, penalties and interest.

It is obvious also with reference to the element of improvements that if "the breaking and working down" of the land was of any benefit to the land it must have had some value for present use of the land even if it also had value in the nature of a permanent improvement. The latter value does not exist to the exclusion of the former, and not all of the value, or of the "sums reasonably paid" to obtain that value, can be con-

sidered as expended for improvement alone. It is necessary for the court to hear evidence concerning, and to determine, the reasonableness of the expenditures actually made and the amounts thereof, if any, properly attributable to improvements.

Finally we must consider the question whether the land was properly shown to be taxable. It is clear that if it was not lawfully subject to tax, no taxes are delinquent thereon and the deposit called for under section 2214 cannot be required as a prerequisite to defendant's being heard on the trial of the cause. Two issues are presented by this question. First, was the fee patent valid without defendant's express application therefor or consent thereto? Second, if not, did her conveyance of 80 acres out of the 320 included in the fee patent constitute or evidence such consent as to make the fee patent valid as to all the land? To determine these questions we must first refer to the applicable treaties, agreements, and statutes.

By the general Indian Allotment Act of February 8, 1887, Chapter 119, Acts of 49th Congress, 2d Sess., 24 Stat. 388, U. S. C. A., Title 25, Sec. 331; 1 Kappler, Indian Affairs, Laws and Treaties, 2d Ed., p. 33, general provision was made for allotments in severalty to Indians. Section 5 of that Act, 25 U. S. C. A. sec. 348, provided that patents should "issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: *Provided,* That the President of the United States may in any case in his discretion extend the period.

"And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching

the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void: * * * ."

Among the various amendments of the general Indian Allotment Act was the Act of May 8, 1906, Chapter 2348, Acts of the 59th Congress, 1st Sess., 34 Stat. 182, U. S. C. A., Title 25, Sec. 349; 3 Kappler, p. 181, which amended section 6 to provide as follows: "Provided, That the Secretary of the Interior may, in his discretion, and he is hereby authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed * * * ."

When this amendment was adopted the general Allotment Act was not applicable to the Blackfeet Reservation. By the Act of April 15, 1874, Chapter 96, Laws of 43rd Congress, 1st Sess., 18 Stat. 28, 1 Kappler 149, Congress set apart for the use of the Blackfeet and certain other Indian Tribes the area in Montana bounded by the Canadian and North Dakota boundaries, the Missouri River, Maria's River, Birch Creek and the Continental Divide. By the agreement of 1887, approved by Act of Congress of May 1, 1888, Chapter 213, Laws of 50th Congress, 1st Sess., 25 Stat. 113, 1 Kappler 261, the tribes ceded most of that area to the United States. While Article VI of the agreement provided for trust allotments to Indians who had settled upon and made improvements to land, it referred only to land in the portions ceded to the United States.

Article V of the agreement of 1895, approved by Act of Congress of June 10, 1896, Sec. 9 of Chapter 398, 54th Congress, 1st Sess., 29 Stat. 321, 1 Kappler 597, 604, 606, provided as follows: "Since the situation of the Blackfeet Reservation renders it wholly unfit for agriculture, and since these Indians have shown within the past four years that they can successfully raise horned cattle, and there is every probability that they will become self-supporting by attention to this industry, it is

agreed that during the existence of this agreement no allotments of land in severalty shall be made to them, but that this whole reservation shall continue to be held by these Indians as a communal grazing tract upon which their herds may feed undisturbed; and that after the expiration of this agreement the lands shall continue to be held until such time as a majority of the adult males of the tribe shall request in writing that allotment in severalty shall be made of their lands: * * *."

The Act of March 1, 1907, Chapter 2285, Laws of 59th Congress, 2d Sess., 34 Stat. 1015, 3 Kappler 266-286, first made the general allotment act with its amendments applicable to the present Blackfeet Reservation. It provided in part as follows: "That so soon as all the lands embraced within the said Blackfeet Indian Reservation shall have been surveyed the Commissioner of Indian Affairs shall cause allotments of the same to be made under the provisions of the allotment laws of the United States to all persons having tribal rights or holding tribal relations and who may rightfully belong on said reservation. That there shall be allotted to each member forty acres of irrigable land and two hundred and eighty acres of additional land valuable only for grazing purposes; * * *."

The general allotment act, as above noted, had already been amended in 1906 so that the 25-year trust period, subject to further extension by the President, with its restrictions against sale, encumbrance and taxation, was not absolute but was subject to termination by the Secretary of the Interior upon his determination that the individual allottee was competent to manage his affairs.

No rights vested in defendant to the land in question until 1918 when her allotment was made and trust patent issued, being then subject not only to the Act of 1887 but to all amendments thereof including that of 1906. It is not apparent, therefore, how any interest can have vested in her to an absolute 25-year period of immunity from taxation or how that equitable interest vested in 1918 can be considered impaired by the Congressional Act of 1906. On the contrary, the restriction against

"sale, incumbrance, or taxation" was expressly limited by law to the period prior to the issuance of fee patent, which the Secretary of Interior was authorized to issue short of the 25-year period.

Thus the situation would seem to differ greatly from that involved in the cases of Choate v. Trapp, 224 U. S. 665, 32 S. Ct. 565, 56 L. Ed. 941, and Ward v. Board of County Com'rs of Love County, Oklahoma, 253 U. S. 17, 40 S. Ct. 419, 64 L. Ed. 751, in which the exemption from taxes was entirely separate from the restrictions against alienation and encumbrance, and from the trust period; and also from those cases and the further cases of Morrow v. United States, 8 Cir., 243 F. 854; Board of Commissioners of Caddo County, Oklahoma v. United States, 10 Cir., 87 F. 2d 55; United States v. Nez Perce County, Idaho, 9 Cir., 95 F. 2d 232; United States v. Chehalis County, Washington, D. C. Wash., 217 F. 281; United States v. Board of Commissioners of Comanche County, Oklahoma, D. C. Okl., 6 F. Supp. 401, in all of which the rights accrued by allotment and issuance of trust patents before the passage of the law permitting the Secretary of the Interior to shorten the trust period. However, the rule of those cases seems to have been extended to this situation by the federal courts in several cases, the first of which was United States v. Benewah County, Idaho, 9 Cir., 290 F. 628, 631, in which the trust patent was not issued until 1909, after the Act of 1906 had provided that the trust period, with its limitation against sale, encumbrance and taxation was subject to termination short of the 25-year period originally provided by the Act of 1887. The court said:

"There can be no serious question of the authority of Congress to remove restrictions upon the alienation of the lands of allottees with or without the latter's consent. Williams v. Johnson, 239 U. S. 414, 36 S. Ct. 150, 60 L. Ed. 358. But to remove restrictions upon alienation is a different thing from depriving Indian allottees of the immunity from taxation conferred upon them by their trust patents. The Indians were guaranteed nontaxable land for the period of 25 years after the issuance of the trust

patents. In Choate v. Trapp the court gave consideration to the fact that the Indians were offered the allotments on the conditions proposed, and that by accepting the terms and relinquishing their claims they furnished a consideration whch was sufficient to entitle them to enforce whatever rights were conferred. One of those rights was exemption from taxation. The court held that the provision that the land should be non-taxable was a property right, which Congress undoubtedly had the power to grant.

"So in the present case the right of the Indians to have their allotments held in trust by the United States free from taxation by local authorities for a period of 25 years was a valuable right. *Once vested* as it was, it could only be divested by due process of law. The provision of the Act of May 8, 1906, 34 Stat. 182, authorizing the Secretary of the Interior, 'whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time shall cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed,' etc., when read in the light of the principles of law here involved, should, we think, be held to mean that such action by the Secretary can be had only upon the application of the allottee or with his consent. * * *'' (Italics supplied.)

Thus, although in that case the interest did not vest until 1909, the court in effect held that a right to the 25-year trust period, with the corresponding immunity from taxation, had vested under the 1887 Act and that in order to prevent its impairment by the Act of 1906 the latter must be held to require the allottee's application for or consent to the issuance of the patent in fee.

While the reasoning seems to us extremely questionable, that case has been followed with reference to lands in the Blackfeet Reservation, first allotted in 1918 by trust patents, in United States v. Glacier County, Montana, D. C. Mont., 17 F. Supp. 411, affirmed in Glacier County, Montana, v. United States, 9 Cir., 99 F. 2d 733. Relating, as these decisions do, to

a question arising under a federal statute, and to the interpretation of such statute, we consider this court bound by them. We therefore hold that the fee patent issued within the 25-year trust period is valid only if issued upon the allottee's application or with her consent.

The final question is whether defendant's conveyance by warranty deed of 80 of the 320 acres included in the fee patent constituted an acceptance or evidence of the acceptance of the patent. There is no element of estoppel or waiver as to the land in question here. If the fee patent was not lawfully issued the trust period still ran, during which any attempted conveyance by the Indian was absolutely void under the federal statute. Therefore the conveyance could not of itself constitute an acceptance of the fee patent. At the most it could constitute merely evidence that the patent had previously been accepted. One cannot convey land which he does not own, and defendant's only possible source of title was through the fee patent in question. It seems clear that such an act, if performed by a person sui juris, must be taken as an admission of the prior acceptance of the conveyance to him in fee, and that even in the case of a person not sui juris it must constitute some evidence to that effect. But as to such person, although the recording of a patent or the giving of a mineral lease may "argue persuasively that the patent was accepted," it does not constitute a binding admission of the acceptance or conclusive evidence thereof. Board of County Commissioners of Caddo County, Oklahoma, v. United States, supra [87 F. 2d 57]. The same must be equally true of a conveyance of part of the land.

Consequently we must conclude that the memorandum opinion is erroneous in holding, as a matter of law, that because of her conveyance of 80 acres of the land "she cannot contend at this time that the title to the land involved is still held under the terms of the trust patent." Under the decision in the last-cited federal case it is for the court to hear that and any other evidence bearing upon the question of the acceptance of the fee patent, in order to determine whether the land included in it

thereby became subject to taxation by plaintiff county, so that lawful taxes are delinquent thereon and section 2214 becomes applicable.

Respondent Manley has made a cross assignment of error relating to a matter not yet mentioned in this decision. The defendant and appellant, Florence Samples Hall, failed to answer within twenty days after the service of summons and her default was entered on the twenty-first day. On the next day she served and filed her motion to vacate the default. Her motion was based upon the affidavits of herself and her attorney which were filed therewith, together with "oral evidence that the movant may introduce at the time of the hearing, and upon the records and files herein." The record does not disclose any counter-affidavits, nor does it show what evidence, oral or otherwise, was introduced at the hearing.

While on a "further petition for rehearing" respondents sought to supplement the record by a statement showing that the district court records did not show that witnesses were heard, and by the statement of respondent's counsel who was not present at the trial, to the effect that he "is advised and believes" that "neither party called any witnesses," it is obvious that the record cannot thus be supplemented, particularly upon petition for rehearing, and that in any event such showing is insufficient to prove that witnesses were not called, and that the matter was submitted upon only the records, files and affidavits.

After a hearing the court made an order granting the motion and allowing the defendant ten days in which to answer the complaint, the answer was filed and the further proceedings had which have already been discussed.

Respondent's cross assignment is that "the appellant's motion * * * and supporting affidavit were not sufficient to appeal to the discretion of the Court." His entire argument upon the assignment is that "the affidavit did not disclose the facts concerning the defense of appellant and was not sufficient to enable the Court to tell whether or not appellant had a meri-

torious defense. The answer that was finally filed discloses that appellant did not have a meritorious defense * * *."

It is clear that the answer filed ten days after the order can ■ have no possible bearing upon the sufficiency of the showing upon which the order was made, and that in the absence of a record showing the evidence adduced upon the hearing it is impossible to find that the showing was insufficient. We cannot, therefore, find that the court was in error in making the order.

As above noted, the specific objection made on cross-assignment of error that the motion and supporting affidavit were insufficient to disclose whether appellant had a meritorious defense is answered by the fact that the affidavit stated as an ultimate fact that appellant had never applied for nor obtained a patent to the land. That is the question upon which the whole case hinges, and it must be determined upon all the evidence, including appellant's conveyance of 80 acres of the land.

The cause is remanded with instructions to the district court to vacate the order to show cause, the order for the deposit of money, the defendant's default, and the decree, and to entertain further proceedings in accordance herewith.

Mr. Justice Cheadle, concurs.

Mr. Justice Adair, (specially concurring).

I concur in holding the procedure attempted under section 2214, Revised Codes of Montana, invalid because of the insufficiency of the affidavit and I concur in remanding the cause to the district court with instructions to vacate and set aside (a) the order to show cause, (b) the order for the deposit of money, (c) the appellant's default, and (d) the decree herein.

I am of the opinion that under the facts shown by the record herein and in the absence of any application by the Indian allottee for a fee patent that the 160 acres in question were immune from taxation during the trust period of 25 years from and after February 28, 1918, the date of the issuance of the trust patent to the United States in trust for the appellant who is an Indian ward of the United States enrolled as a member

of the Blackfeet Tribe and residing upon the Blackfeet Indian Reservation.

The fact that on June 11, 1918, being but three months and eleven days after the issuance of the trust patent, without application made therefor, the United States issued the fee patent does not relieve the federal government of its obligation, at the expiration of the trust period, to convey the land to said Indian free from all charges and encumbrances whatsoever. ''The authorities are uniform to the effect that this right of exemption is a vested right, as much a part of the grant as the land itself, and the Indian may not be deprived of it by the unwanted issuance to him of a fee patent prior to the end of the trust period.'' United States v. Nez Perce County, Idaho, 9 Cir., 95 F. 2d 232, 235. When the fee patent for which she had never made application was thrust upon this Indian, Glacier county promptly placed her land upon its tax rolls and when she failed to pay the taxes levied the county assumed to take title to the land for the delinquent taxes. By such proceedings the county claims it acquired and the Indian lost title to the 160 acres here involved but, as was said by the Supreme Court of the United States in Board of Com'rs of Jackson County v. United States, 308 U. S. 343, 60 S. Ct. 285, 288, 84 L. Ed. 313: ''The state will not be allowed to invade the immunity of Indians, no matter how skilful its legal manipulations.''

At no time did the Indian transfer any part of the 160 acres involved and the fact that in 1920 she assumed to convey to her stepfather 80 acres which constitute no part of the 160 acres claimed by the respondents certainly does not evidence any consent to the issuance to her in the year 1918 of the unsolicited fee patent.

''Consent'' in law is more than a mere formal act of the mind, and is an act unclouded by error or mistake, since consent is vitiated by error. Pan American Production Co. 1. Robichaux, 200 La. 666, 8 So. 2d 635; Butler v. Collins, 12 Cal. 457. ''Consent'' implies something more than mere acquiescence in a state of things already in existence. Builders Supply Co. v. North

Augusta Elec. & Imp. Co., 71 S. C. 361, 51 S. E. 231. "Consent" means a voluntary agreement by a person in the possession and exercise of sufficient mental faculty to make an intelligent choice to do or allow some lawful thing. If a person is divested of the power of refusal by reason of total or partial want of mental faculties, the damage cannot be excused on the ground of consent given, and consent given by a person in such a condition is equivalent to no consent at all; more especially so when the state of mind is well known to the party doing him the injury. McCue v. Klein, 60 Tex. 168, 48 Am. Rep. 260.

"It must be remembered that great care should be taken in dealing with the Indians where there are so many treaties, statutes, and regulations to be considered which were entered into, enacted, and adopted with the intent, in most instances, of properly caring for a helpless and dependent people. To provide every reasonable safeguard for the protection of the Indians and the security of their possessions is the plain duty of the government." United States v. Glacier County, D. C., 17 F. Supp. 411, 412.

"The situation is not the ordinary one involving persons under no disability; we are dealing with Indians in a condition of wardship. These people had neither knowledge of their rights nor adequate means of safeguarding them. The fee title had been thrust upon them without consulting their wishes, and they had been given to understand by those in charge of their affairs that they could not lawfully resist the procedure throwing their lands open to taxation. * * * Under all the circumstances, there is no justification for holding that the elements of duress were not present." Glacier County v. United States, 9 Cir., 99 F. (2d) 733, 735.

Mr. Justice Angstman (concurring in part and dissenting in part).

I concur in the result reached in the foregoing opinion of Mr. Chief Justice Johnson, but not with all that is stated in it. I disagree with that part of the opinion holding that under

section 2214 the affidavit is faulty if it does not set forth the correct amount as therein contemplated and I think the statute need not be strictly complied with in the sense that the court has no jurisdiction unless this is done.

I concede of course that an affidavit is essential to invoke the jurisdiction of the court under section 2214 to make an order commanding a deposit. But I do not believe that a misstatement in the affidavit of the amount required as a deposit affects the jurisdiction of the court to do what of right should be done in the light of the proof offered at the hearing. If it did the affiant claiming a deposit for improvements as therein authorized would be driven to the point of stating the exact amount of the improvements under penalty of having the proceedings fail if the correct amount be not stated. The affidavit in question here stated that the sum of $360 was expended for preserving and making improvements upon the property after three years from the date of the tax sale and fixed the amount paid by affiant to acquire the land and the taxes thereafter.

The court of course was not bound by the statements contained in the affidavit as to any item, but should fix the amount as shown by the evidence after hearing. The legislature did not intend that the proceeding should be attended with the formality incident to the trial of the action, nor that the sufficiency of the affidavit should be held to the same strict rules usually applied to pleadings in the case.

I think the affidavit here was sufficient to invoke the jurisdiction of the court to fix the amount required as a deposit to meet the tax obligation as well as the improvements. The fact that the affidavit sets out what was paid by affiant for the property rather than the amount of the taxes, interest and penalty, was but a partial statement of his right to the deposit. The affidavit should have gone further and stated that the amount paid for the property by affiant and which he demanded as a deposit, exclusive of that demanded for improvements, did not exceed but was less than the taxes, penalty and interest. But I think that matter could be met by the proof. The affidavit, in my

opinion, was sufficient to invoke jurisdiction. The situation is no different than if a defective complaint be filed. The court would still have jurisdiction in such a case and could grant leave to file an amended complaint. So here, upon attacking the affidavit on that ground, the court should and doubtless would have authorized its amendment. I concur in that part of the foregoing opinion holding that the court erred in finding that there had been improvements to the extent of $360.

Mr. Justice Morris (dissenting).

I dissent. The affidavit requiring the deposit in the action at bar is, in my judgment, sufficient and in that particular I join in the dissent of Mr. Justice Angstman, but I am not in accord with the majority opinion in many essential particulars. Much that is said therein is immaterial and confuses rather than clarifies the real issues. The essential question for determination here is as to whether or not Florence Samples Hall, by her act in selling and conveying 80 acres of the land covered by the patent in fee issued to her, accepted the fee patent as a whole, or was her act in selling the 80 acres acceptance of the fee patent only as to such 80 acres. On this question it was said in In re Solomon, E. D. Pa. 1941, 40 F. Supp. 62, 63, quoting from 19 Am. Jur. 619, sec. 21: "A person cannot claim under an instrument without confirming it. He must found his claim on the whole, and cannot adopt that feature or operation which makes in his favor, and at the same time repudiate or contradict another which is counter or adverse to it." The patent in fee issued to Florence Samples Hall covered both the 80 acres she sold and conveyed to her stepfather, and the 160 acres for which Glacier county took tax title for failure to pay the taxes levied against it. The sale of the 80 acres was an acceptance of the fee-simple patent of all the land covered by that particular patent.

In the case of United States v. Nez Perce County, Idaho, 9 Cir., 95 F. 2d 232, it was said, relative to the right of the state to tax Indian lands, that if the fee patent were issued to an Indian "without his application or *consent*" his land remained

immune from taxation. On the question of consent it was said in In re Hudson County, 106 N. J. L. 62, 144 A. 169, 176: "Consent is manifested by action, or by inaction, or by silence, from which arises an inference that consent has been given." If Indians are to be bound by section 349 of Title 25 U. S. C. A., the defendant's rights were foreclosed when she sold the 80 acres of the land.

As to the status of Florence Samples Hall, as a citizen in so far as the particular land here involved is concerned, the wardship of the United States clearly ceased by virtue of section 349 of Title 25 U. S. C. A., which provides: "At the expiration of the trust period and when the lands have been conveyed to the Indians by patent in fee, as provided in section 348, then each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the State or Territory in which they may reside; and no Territory shall pass or enforce any law denying any such Indian within its jurisdiction the equal protection of the law: Provided, that the Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent: Provided further, That until the issuance of fee-simple patents all allottees to whom trust patents shall be issued shall be subject to the exclusive jurisdiction of the United States."

The authorities are uniform to the effect that on the issuance of a patent in fee upon the application of the allottee or by his or her consent, the title to the land passes from the United States, and the prior trust and the incidental restrictions against alienation are terminated; the allottee ceases to be a ward of the United States and the land becomes subject to the laws of the state in which it is located, and subject to taxation the same as lands of other citizens. Section 349, Title 25, supra; Larkin

v. Paugh, 276 U. S. 431, 48 S. Ct. 366, 72 L. Ed. 640; Sweet v. Schock, 245 U. S. 192, 38 S. Ct. 101, 62 L. Ed. 237; Dickson v. Luck Land Company, 242 U. S. 371, 37 S. Ct. 167, 61 L. Ed. 371; Board of Commissioners of Jackson County v. United States, 308 U. S. 343, 60 S. Ct. 285, 84 L. Ed. 313; United States ex rel. Marks v. Brooks, D. C., 32 F. Supp. 422; State v. Big Sheep, 75 Mont. 219, 243 Pac. 1067; State v. Phelps, 93 Mont. 277, 19 Pac. (2d) 319; State ex rel. Williams v. Kamp, 106 Mont. 444, 78 Pac. (2d) 585.