## UNITED STATES v. NEZ PERCE COUNTY, IDAHO, et al.
### No. 8560.

Circuit Court of Appeals, Ninth Circuit.
Jan. 27, 1938.

John A. Carver, U. S. Atty., and E. H. Casterlin and Frank Griffin, Asst. U. S. Attys., all of Boise, Idaho, and John L. Wheeler, Sp. Atty., Dept. of Justice, of Los Angeles, Cal., for the United States.

Ray E. Durham and E. C. Butler, both of Lewiston, Idaho, for appellees.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The United States brought suit against Nez Perce County, Idaho, for the purpose of quieting its title to certain lands within the Nez Perce Indian Reservation held by the Government in trust for Caleb Carter, an Indian ward enrolled as a member of the Nez Perce Tribe. The Government sought also to recover taxes paid by the ward.

It is essential to an understanding of the question before us briefly to give an account of the relations between the United States and this tribe and to review certain applicable federal statutes. In 1855 a treaty was entered into by the terms of which these Indians relinquished certain lands, and other lands were set apart to them. 12 Stat. 957. A second treaty was made in 1863 in which the Nez Perce made further relinquishments. 14 Stat. 647. Article 3 of the treaty provided in substance that so much of the reserved lands as might be suitable for cultivation should be surveyed, the parcels so surveyed to be allotted under rules and regulations such as would insure to the allottee, or to his family in case of his death, the possession and enjoyment of the allotment as a permanent home. The residue of the lands reserved were to be held in common for pasturage for the sole use and benefit of the Indians. The Commissioner of Indian Affairs was required to issue certificates specifying the names of the individuals to whom allotments were assigned, and these certificates were required to state that "said tracts are set apart for the perpetual and exclusive use and benefit of such assignees and their heirs." Until otherwise provided by law, these tracts were made exempt from levy, taxation, or sale.

On February 8, 1887, Congress passed the General Allotment Act. 24 Stat. 388. The first four sections of the act, see 25 U.S.C.A. §§ 331–334, and notes, provide for the allotment in severalty of tracts within established reservations. Section 5, 25 U.

S.C.A. § 348, requires the issuance of patents in the names of the Indian allottees, declaring that the United States will, for the period of twenty-five years, hold the land thus allotted in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or his heirs, and that the United States will at the expiration of the period convey the same by fee patent to the Indian or his heirs, "free of all charge or incumbrance whatsoever." There is a proviso that the President may in any case extend the period. By Act of May 8, 1906, 34 Stat. 182, 25 U.S.C.A. § 349, the Act of February 8, 1887, was amended to provide "that the Secretary of the Interior may, in his discretion, and he is authorized; whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed." By Act of June 25, 1910, 36 Stat. 855, 25 U.S.C.A. § 372, it was provided that when any Indian to whom an allotment of land has been made, dies before the expiration of the trust period and before the issuance of a fee-simple patent, the Secretary of the Interior shall ascertain the legal heirs of such decedent. If the Secretary finds the heirs of such decedent competent to manage their own affairs, he is directed to issue to such heirs a patent in fee for the allotment of the decedent; and he may, if he finds the lands of the decedent capable of partition to the advantage of the heirs, cause the shares of such as are competent, upon their petition, to be set aside and patents in fee to be issued to them therefor.

It was apparently considered that the Act of May 8, 1906, authorized the issuance of fee-simple patents to the Indians, prior to the expiration of the trust period or extension of such period, without application therefor by the Indian and without regard to his consent. Many patents in fee are said to have been issued to members of the Nez Perce Tribe under authority of that statute. By Act of February 26, 1927, 44

Stat. 1247, 25 U.S.C.A. § 352a, the Secretary of the Interior was empowered, in his discretion, to cancel any patent in fee-simple issued to an Indian allottee or to his heirs before the end of the period of trust described in the original or trust patent, or before the expiration of any extension of the trust period, "where such patent in fee simple was issued without the consent or an application therefor by the allottee or by his heirs: Provided, That the patentee has not mortgaged or sold any part of the land described in such patent: Provided also, That upon cancellation of such patent in fee simple the land shall have the same status as though such fee patent had never been issued."

■ Turning now to the facts of the case before us, it appears that in 1895 the Department of the Interior made allotments of lands to John Carter, William Carter and Mary Carter, members of the Nez Perce Tribe. On June 13, 1895, and December 1, 1897, pursuant to the Act of February 8, 1887, trust patents were issued for these Indians covering their allotments. These patents contain the verbiage required by section 5 of that act, including the proviso for the extension of the trust period. Before the expiration of the period the original allottees named in these patents died. In 1919 a petition was filed by certain of their heirs for the partition of the trust lands. Caleb Carter, the Indian involved in the present suit, was one of these heirs, and though named in the application for partition he did not join therein. It is shown, however, that he wrote to an Oklahoma Congressman concerning the partition proceedings, allegedly for the purpose of having the same speedily determined. The lands were partitioned among the heirs, and on May 31, 1921, a fee-simple patent was issued to Caleb Carter for his portion. The instrument was delivered to Carter and receipted for by him. Meanwhile, on March 24, 1920, the trust period applicable to these grants had been extended by the President for an additional term of ten years, and this period was again extended on March 18, 1930, for a further term.[1]

---

[1] Appellees suggest that since the fee title was outstanding in the Indian in 1930, the extension of the trust period by the executive order of that year is unavailing. However, the order expressly extends the trust period on all allotments made to Nez Perce Indians, with certain designated exceptions which do not include the lands in controversy. As pointed out in the opinion of the trial court, the suggested interpretation of the act is too narrow, since it fails to take account of the power of Congress to impose restrictions over Indians in tribal relationship. Brader v. James, 246 U. S. 88, 38 S.Ct. 285, 62 L.Ed. 591.

The lands embraced in the fee patent to Caleb Carter were placed on the tax rolls of Nez Perce County for the year 1922 and were annually thereafter assessed for taxation until 1933. Carter paid these taxes from 1922 to the last half of 1927, but thereafter the levies became delinquent and remain unpaid, and in 1932 tax deed was issued to the county. This Indian at no time mortgaged or sold any part of the lands patented to him. About 1930 he made application to the Secretary of the Interior, under authority of the Act of February 26, 1927, for the cancellation of his patent and the restoration of his land to a trust status. On April 20, 1932, the Secretary made an order canceling the patent. This order recites that the fee patent was issued during an extension of the original trust period covering the land, without application by or consent of Caleb Carter. The present suit was brought by the United States to quiet its title as against the claimed lien of the county and to recover on his behalf the taxes paid by the Indian.

Upon the conclusion of the trial the court made. findings and entered a decree adjudging that the defendant Nez Perce County has a valid and subsisting lien for unpaid taxes levied by it for the last half of 1927 and for the years 1928 to 1932, inclusive, on the real property involved in the suit, and that the order issued by the Secretary of the Interior canceling the patent in fee simple is subject to the lien of the county for these unpaid taxes. It was adjudged that in the event the land be sold by the county for failure to pay such taxes the Secretary's order of cancellation shall have no force or effect. It was further adjudged that on April 20, 1932, the lands in question were restored to their trust status by the cancellation of the patent and are now held in trust by the United States, subject only to the lien of the county, and that all taxes levied against the land subsequent to that date are void. Recovery of the taxes paid by Carter was denied. From this judgment the United States alone appealed.

■ In the bill it was alleged that the fee patent was issued to Carter without his application or consent. The answer denies this allegation. The trial court made no finding on the issue so presented. Certain evidentiary facts bearing on the subject were found, but the ultimate fact was not found either one way or the other. In the view which the trial court took of the law (see United States v. Nez Perce County, D.C., 16 F.Supp. 267) the question of consent was apparently not believed to be material. However, in our view, consent is the crucial issue to be determined. The Indian testified orally and in some detail concerning the circumstances surrounding his receipt of the patent and his attitude toward it. The trial court was in a better position than we are, with only the cold record before us, to determine the degree of the Indian's intelligence and understanding and to gauge the frankness and honesty of his testimony. For this reason it becomes necessary to remand the cause for a finding of the ultimate fact of consent.

■ It was the view of the trial court that the treaty with the Nez Perce granted exemption from taxation only "until otherwise provided by law," and that the Act of May 8, 1906, terminated the immunity in all cases where fee patents were issued thereunder. The cancellation of Carter's patent under authority of the later 1927 act was thought to restore the exempt status, but the statute was believed to have no retroactive effect; hence, during the period while the fee was in the Indian, the land was taxable. This view disregards other assurances contained in the 1863 treaty. More important still, it ignores the terms of the General Allotment Act of 1887, and the wording of the trust patent itself. The Allotment Act, as well as the trust patent, by plain implication granted the Indian immunity from taxation during the trust period or any extension of it, and he had the right finally to receive his lands "free of all charge or incumbrance whatsoever." The authorities are uniform to the effect that this right of exemption is a vested right, as much a part of the grant as the land itself, and the Indian may not be deprived of it by the unwanted issuance to him of a fee patent prior to the end of the trust period. Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Ward v. Love County, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751; United States v. Benewah County, 9 Cir., 290 F. 628; Morrow v. United States, 8 Cir., 243 F. 854; Board of Com'rs of Caddo County v. United States, 10 Cir., 87 F.2d 55; United States v. Dewey County, D.C., 14 F.2d 784; United States v. Comanche County, D.C., 6 F.Supp. 401; United States v. Chehalis County, D.C., 217 F. 281. Treaties with the Indians and acts of Congress relative to their rights in property reserved to them have always been

liberally construed by the courts. The dependent condition of these wards of the Government makes it imperative that doubtful provisions in treaties and statutes be resolved in their favor. This court in United States v. Benewah County, supra, as early as 1923 declared that the Act of May 8, 1906, should be held to mean that the action of the Secretary of the Interior authorized by it can be had only on the application of the allottee or with his consent. The Act of February 26, 1927, was little more than a statutory recognition of the principle there announced. The fee patent in the present instance was issued during the trust period, or at least during an extension of that period. It follows from what has been said that, if it was issued to Carter without his application or consent, his land remained immune from taxation during the whole of the time from 1921 to 1932, and the lien of the county should be held void.

 There was a finding that the payments of taxes were made voluntarily, and without compulsion or duress. This finding is assigned as error. The Indian testified that he paid the taxes because they were levied against his property. He did not protest the payment because, he says, it would have done him no good. There is no other evidence on the subject and we are unable to agree that the taxes were voluntarily paid. The Idaho law, section 61-1009, Idaho Code 1932, provides in effect that if taxes on real property are not paid when due, the tax collector must enter the same on the real property roll as delinquent. This delinquency entry has the force and effect of a sale to the county. Redemption is permitted upon payment of the tax, with penalty and interest added, and if the property is not redeemed within three years a tax deed is issued. Where nonpayment of taxes results in an almost immediate sale of the property, a cloud is cast upon the title. Even in the case of persons under no disability, payment under these circumstances is usually held to be involuntary. See Atchison, T. & S. F. Ry. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436, Ann.Cas. 1913C, 1050; Gaar, Scott & Co. v. Shannon, 223 U.S. 468, 32 S.Ct. 236, 56 L.Ed. 510. And we are here dealing with a tribal Indian. The United States is not precluded from recovering taxes paid without protest by an Indian ward. Board of Com'rs of Caddo County v. United States, supra; United States v. Dewey County, supra;

United States v. Chehalis County, D.C., 217 F. 281. Compare Ward v. Love County, supra.

The recovery of interest on the amounts paid as taxes should not be allowed. Interest may not be recovered upon money due from the sovereign unless some positive statute or contract of the state evidences its consent to pay it. United States v. North Carolina, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336; United States v. North American Transp. & Trading Co., 253 U. S. 330, 336, 40 S.Ct. 518, 521, 64 L.Ed. 935; Seaboard Air Line R. Co. v. United States, 261 U.S. 299, 304, 43 S.Ct. 354, 355, 67 L.Ed. 664. The county is a political subdivision of the state, and as such would seem to be entitled to this form of immunity. While the Code provision (section 61-1902, Idaho Code 1932) allows interest on taxes refunded after erroneous collection, the statute has no application in suits for refund brought in the federal courts. We are not aware of any statute of the State of Idaho which evidences the consent of that state to a recovery of interest in a situation such as the one presented here.

The cause is remanded to the trial court with instructions to make a finding on the question of the consent of the Indian to the issuance of the fee patent. If it is found that there was no consent, judgment should be entered invalidating the lien of the county for unpaid taxes and for the recovery of taxes paid, without interest thereon, in accord with the views expressed in this opinion.