## UNITED STATES v. GLACIER COUNTY, MONT., et al.

### No. 531.

District Court, D. Montana.
Nov. 20, 1947.

See also 62 F.Supp. 27.

John B. Tansil, U. S. Dist. Atty., of Billings, Mont., Harlow Pease, and Emmett C. Angland, Asst. U. S. Dist. Attys., both of Butte, Mont., and Franklin A. Lamb, Asst. U. S. Dist. Atty., of Billings, Mont., for plaintiff.

Lloyd A. Murrills, of Cut Bank, Mont., for defendants F. E. Manley and Lottie Manley, his wife.

Wilbur P. Werner and John J. Greene, both of Cut Bank, Mont., and Louis P. Donovan, of Shelby, Mont., for defendant Glacier County, Mont.

PRAY, District Judge.

The plaintiff in the above-entitled cause is seeking to cancel the fee simple patent issued to Florence Samples in June, 1918, and it appearing that she had sold and disposed of 80 acres of the 320 conveyed by the patent, the Government is also seeking to quiet title to the remaining 240 acres against the claims of the defendants, asserting that the land was non-taxable, that the fee simple patent should be cancelled as to the 240 acres unsold, so stated by Counsel for Government, and that the plaintiff be adjudged the owner in fee of the remaining 240 acres in trust for Florence Samples Hall. The patentee sold the 80 acres, described in the deed and patent in 1920, and both were recorded on the same day; in 1922 she formally declared the remaining 240 acres for assessment and signed the Glacier County assessment return; the 1919 tax was voluntarily paid by her but the 1920 and subsequent taxes were not paid, and in 1927 the tax deed was issued to Glacier County; in 1930 Mrs. Hall applied for cancellation of the fee simple patent in so far as it affected the 240 acres of land not sold but her application was refused; in 1941 Glacier County sold the land to the defendant, F. E. Manley.

Strong reliance is placed by plaintiff upon the well-known authority of Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941. Plaintiff says that Mahnomen County, Minn., v. United States, 319 U.S. 474, 63 S. Ct. 1254, 87 L.Ed. 1527, is not an authority in this case. Again the plaintiff places reliance upon the Glacier County v. Frisbee, Mont., 164 P.2d 171, and claims that substantially the same question is before the court in this case, stating that the court: "* * * has in effect denied the right of the defendants to have the title to this same land quieted in them." Plaintiff also refers to Section 352b, Title 25 U.S.C.A., being the Act of February 21st, 1931, but does not mention 352a. To quote from counsel's brief: "Congress in effect approved and confirmed the fee simple patents issued to Indian lands without the consent of such allottee, except in the cases in which the Secretary of the Interior was authorized by the Act to cancel the patents in fee in his discretion, and to cause new trust patents to be issued in lieu thereof, and under the terms of said Act the Secretary of the Interior was not authorized to cancel the fee simple patent issued to Florence Samples in this case and has not cancelled it."

It is apparently contended by the defendants that the United States Government itself is prevented from acting to enforce for the benefit of one of its wards a vested right

746

not to be taxed because the Secretary of the Interior does not have authority to act. In other words, "because the Secretary of the Interior is not authorized to cancel the fee simple patent in his discretion."

The defendant, Glacier County, contends that the following points should be decided in its favor:

(1) The sale and conveyance of a part of the land conveyed to Florence Samples by the fee simple patent, was an acceptance of the fee simple patent by Florence Samples.

(2) The pleading and proof in this case is insufficient to entitle the plaintiff to any relief because there is neither allegation nor proof to bring the case within the provisions of Sections 352a and 352b, Title 25 U. S.C.A.

(3) That the decision of the Circuit Court of Appeals (Ninth Circuit) in Glacier County v. United States, 99 F.2d 733, 735, is not in point on any issue involved in this case.

(4) That the decision of the Supreme Court of Montana in Glacier County et al. v. Frisbee et al., 164 P.2d 171, is not res judicata of any question involved in this case, and the court rendering that decision had no jurisdiction of any question involved in this case.

At the outset, in support of their first paragraph counsel refer to the correspondence of Forrest R. Stone, Superintendent of the Blackfeet Indian Reservation, in which, on May 20, 1930, he wrote the Commissioner of Indian Affairs in the interest of the patentee to inquire whether the Department could not cancel the patent to the 240 acres, which she still retained out of the 320 conveyed to her by the patent, and received the following reply from the Commissioner, C. J. Rhodes: "Although the Indian did not apply for consent to the issuance of the Patent and it was, therefore, ineffective to pass the title, it became effective upon her execution of a deed to part of the land. The Act of February 26, 1927, 44 Stat. 1247, authorizing cancellation of such patent imposes the condition that there shall be no sale or mortgage of any part of the patented land. A sale or mortgage by the patentee of part or all of the land is con-

strued as consent to the issuance of the patent which became effective at once and the fee title passed which cannot revert to the Government by cancellation of the patent."

Counsel for the defendant county endorse the foregoing statement of Commissioner Rhodes as a correct interpretation of the law, and thereafter quotes 7 Thompson on Real Property, Sec. 4169, as follows: "To constitute a complete conveyance there must be an acceptance by the grantee. Delivery is the act of the grantor, acceptance the act of the grantee." And 26 C.J.S., Deeds, § 51: "So there may be an acceptance by the retention of the deed by the grantee; by an assertion of title by him; by his conveyance or mortgage of the property; by acts of ownership generally in respect to the property." And again, section 7496, R.C.M.1935: "A contract which is voidable solely for want of due consent may be ratified by a subsequent consent."

Reference is made to 25 U.S.C.A. § 352a, enacted February 26, 1927, wherein relief provided was limited to cases where "the patentee has not mortgaged or sold any part of the land described in such patent". This relates to the validity of fee simple patents issued to Indians without application therefor and before the trust period has expired.

"352a. Cancellation of patents in fee simple for allotments held in trust. The Secretary of the interior is hereby authorized, in his discretion, to cancel any patent in fee simple issued to an Indian allottee or to his heirs before the end of the period of trust described in the original or trust patent issued to such allottee, or before the expiration of any extension of such period of trust by the President, where such patent in fee simple was issued without the consent or an application therefor by the allottee or by his heirs: Provided, That the patentee has not mortgaged or sold any part of the land described in such patent: Provided also, That upon cancellation of such patent in fee simple the land shall have the same status as though such fee patent had never been issued. (Feb. 26, 1927, c. 215, 44 Stat. 1247.)"

Section 352b was enacted February 21, 1931:

"352b. Same; partial cancellation; issuance of new trust patents. Where patents in fee have been issued for Indian allotments, during the trust period, without application by or consent of the patentees, and such patentees or Indian heirs have sold a part of the land included in the patents, or have mortgaged the lands or any part thereof and such mortgages have been satisfied, such lands remaining undisposed of and without incumbrance by the patentees, or Indian heirs, may be given a trust patent status and the Secretary of the Interior is, on application of the allottee or his or her Indian heirs, hereby authorized, in his discretion, to cancel patents in fee so far as they cover such unsold lands not encumbered by mortgage, and to cause new trust patents to be issued therefor, to the allottees or their Indian heirs, of the form and legal effect as provided by sections 348 and 349 of this title, such patents to be effective from the date of the original trust patents, and the land shall be subject to any extensions of the trust made by Executive order on other allotments of members of the same tribe, and such lands shall have the same status as though such fee patents had never been issued: Provided, That this section and section 352a of this title shall not apply where any such lands have been sold for unpaid taxes assessed after the date of a mortgage or deed executed by the patentee or his heirs, or sold in execution of a judgment for debt incurred after date of such mortgage or deed, and the period of redemption has expired. (Feb. 26, 1927, c. 215, § 2, as added Feb. 21, 1931, c. 271, 46 Stat. 1205.)"

The intention of Congress in the enactment of the last two sections is expressed in committee reports of both the House and Senate, and fully confirms the evident meaning of the language employed in Sections 352a and 352b, and would seem to leave no doubt as to the interpretation to be placed thereon, or as to the fact situation to which these sections of the statute are applicable.

This court has heretofore had occasion to refer to these two sections in a similar case involving the question of right to cancellation of fee simple patents issued to Indians. Gerard v. Mercer, D.C., 62 F. Supp. 28. The reports of the committees of Congress relating to these two sections, to accompany H. R. 15267, 71st Congress, 3d Session, and S. 2714, 69th Congress, 1st Session, are so comprehensive and unequivocal in expression of intention and in setting forth reasons for the passage of such measures, that the court will refer to certain pertinent passages contained in the reports. In H.R. 15267, the Committee said:

"Placing a voluntary encumbrance upon or disposing of lands so patented, must in law be considered as an acceptance of the fee patent and as a waiver of the tax exempt provisions of a trust patent, but where forced patent land has neither been encumbered nor sold by the patentee, such patent ought to be cancelled on application made to the Secretary of the Interior." (Report No. 1896 from Committee on Indian Affairs filed in House January 29, 1927.)

And the Senate Committee in reporting S. 2714, made the following statements:

"It will be observed by the terms of the amendment, no title will be effected until the Secretary of the Interior has taken affirmative action by cancelling the illegally issued patent in fee, and in lieu thereof substituted a trust patent, and that when this has been done, the lands will have the same status as they would have had if no patent in fee had ever been issued * * *.

"Under the law as it existed at the time the fee simple patents complained of were issued, it has been held by the courts that the Indians have vested right in the tax free status of their allotments during the trust periods fixed by law, and that such rights cannot be taken from them without their consent by the device of a forced patent.

"Placing a voluntary encumbrance upon, or disposing of land so patented must in law be considered as an acceptance of the fee patent and a waiver of the tax exempt provisions of a trust patent, but where forced patent has neither been encumbered nor sold by the patentee, such patent ought

to be cancelled on application made to the Secretary of the Interior * * *.

"Taxes or even tax deeds cannot be said to be encumbrances of a character to prevent cancellation as these impositions are not voluntary."

"Your committee was of the opinion that where land covered by such illegally issued patent had been either mortgaged or sold by the Indian to whom the patent was issued that such mortgage or sale, as the case might be, would amount to an acceptance of the patent and that he could not be heard to say that such patent had been improperly issued." Report No. 1595 from Committee on Indian Affairs filed in the Senate February 12, 1931, recommending passage of Act now Sec. 352b, Title 25 U.S.C.A.

Exhibit No. 9 shows that the fee simple patent and the deed to James Perrine, step-father of Mrs. Hall, who was reared in his family, were recorded at the same time, and the deed was returned to James Perrine and it is fair to assume the patent accompanied it; and it also appears that Mr. Perrine, who, like Mrs. Hall, was only part Indian and had received a good education, was looking after her business interests at the time she and her husband, a white person, were engaged in the grocery business at Portland, Oregon.

It has been established by the record that Mrs. Hall never made any written application for the issuance of the fee simple patent, or refused to accept it from the Indian Agency or ever returned it, and as it now appears the real questions before the court are whether consent has been shown by her acts subsequent to the issuance of the patent and in respect to taxes whether her acts were voluntary, in payment thereof and in making return for assessment of the 240 acres, and whether the land was sold for taxes subsequent to the sale of the 80 acres to her step-father.

It has been held that consent depends upon the facts and circumstances appearing in evidence in the particular case. United States v. Nez Perce County, 9 Cir., 95 F.2d 232. Mrs. Hall was of one-eighth Indian blood, her father one-quarter and her mother a white woman; she had been married three times and each time to a white man. Her appearance on the witness stand was that of an intelligent white person of good understanding, although her name appears on the rolls as an Indian ward of the Government. From the facts disclosed in respect to her opportunities for an education they would seem to rate favorably with the average white person in comparable circumstances. But as a witness she seemed to have a poor memory about the patent, when and to whom it was delivered, where it was kept, what kind of a patent it was, and did not recall ever having seen it, and yet the patent was recorded by her step-father and her warranty deed based upon it. She never refused the patent, or sent it back or had her step-father do so, and never tried to have it cancelled until many years after its issue, so far as the evidence shows, until the correspondence took place with the Commissioner of Indian Affairs as herein related. She sent her bank check from Portland in payment of her taxes. She sold 80 acres of her land for $800; which she admitted was a fair price for the land; she conveyed the land by warranty deed which she could not have done without accepting and consenting to the patent as an indispensable basis of her act for such conveyance. In other words, she warranted the title and said by her warranty that she had good title to the land and a legal right to convey it.

It is not clear how the Government can contend that Mrs. Hall did not consent to the patent to the extent of 240 acres, when the patent conveyed 320 acres. If she did not apply for the patent or consent to its issuance, how could she convey part of the land by warranty deed and consent to the patent to that extent and repudiate the patent as to the remainder of the land; the inconsistency is so great that the court will not attempt to solve it, and counsel for the Government have not done so, nor have they cited any authority in point to sustain their position. Mrs. Hall either consented to the issuance of the patent or she did not do so—the patent is an indivisible entity and can not be held good as to part of the tract of land conveyed and bad as to the remainder; it conveyed to Mrs. Hall her allotment in fee simple consisting of 320 acres.

There is a provision in Section 352b of Title 25 U.S.C.A. which would seem to apply precisely to the facts found in this case, which is in the following words: "Provided, That this section and section 352a of this title shall not apply where any such lands have been sold for unpaid taxes assessed after the date of a mortgage or deed executed by the patentee * * *."

It appears that after the conveyance of 80 acres of the land included in the patent, the remainder of the land, so included, was sold for unpaid taxes assessed after the date of the deed. It would seem that the Secretary of the Interior would have no authority to cancel the fee patent in this case, but would be governed entirely by the statutes above quoted, and that this court would also be obliged to observe the same law.

This court has considered Glacier County v. United States, 9 Cir., 99 F.2d 733, and United States v. Glacier County, D.C., 17 F.Supp. 411, and also Glacier County et al. v. Frisbee et al., Mont., 164 P.2d 171, and does not regard them, or any of them, as controlling in this case.

This court has read with a good deal of interest the opinions of the different Justices of the Montana Supreme Court in Glacier County v. Frisbee, and the comments of counsel on both sides in this case regarding the effect of these concurring and dissenting opinions, and without extending this discussion further, it will probably be sufficient to add here that this court finds no prop there for either side in the instant cause; and, furthermore, it will be noted that the United States of America was not a party to that action, had not consented to be sued, and there appeared to be an issue involved that would be of vital interest to the United States.

Counsel for defendant Manley calls attention to the fact that the 1919 tax receipt and 1922 assessment were not in evidence in Glacier County v. Frisbee, also directs attention to the points in common between that case and United States v. Nez Perce County in this, that both cases were remanded to the trial court with directions to determine whether or not the Indian had consented to the issuance of the patent, and to consider the question as a factual matter and not as a question of law.

The issuance of a fee simple patent would remove all restrictions against alienation of the land therein described and conveyed, and would result in the emancipation of the Indian to that extent, so that he could mortgage, sell, or otherwise dispose of the lands conveyed to him by the patent without any supervision or control of any Government official. Acts subsequent to the issuance of the patent by Mrs. Hall strongly indicate her consent to its issuance, that the fee simple patent was valid and that she voluntarily submitted to taxation and paid the first tax assessed against the land. Gerard v. Mercer, D.C., 62 F.Supp. 28; Gerard v. Sherburne, D.C., 69 F.Supp. 940; United States v. Hellard, 322 U.S. 363, 64 S.Ct. 985, 88 L.Ed. 1326; Anderson v. Spear-Morgan Livestock Co., 107 Mont. 18, 79 P.2d 667.

In view of the foregoing facts, as the court understands them to be, and the law deemed applicable, in the court's opinion the issues here should be found in favor of the defendants, and, accordingly, counsel may submit findings of fact and conclusions of law and form of judgment; and exceptions are hereby allowed counsel for the Government.