UNITED STATES of America, Plaintiff,

v.

C. E. FRISBEE; Hazel S. Frisbee, wife of C. E. Frisbee; John M. Angell; Jane Doe Angell, wife of John M. Angell; Union Oil Company of California, a California Corporation; Glacier County, a Political Subdivision of the State of Montana; and all other persons unknown, claiming or who might claim any right, title, estate or interest in, or lien or encumbrance upon the real property described in the complaint, or any part thereof, adverse to plaintiff's ownership, or any cloud upon plaintiff's title, whether such claim or possible claim be present or contingent, including any claim or possible claim of dower, inchoate, or accrued, Defendants.

Civ. No. 1839.

United States District Court
D. Montana,
Great Falls Division.
Sept. 16, 1958.

Krest Cyr, U. S. Atty., Butte, Mont., Waldo N. Spangelo, Asst. U. S. Atty., Billings, Mont., for plaintiff.

Selden S. Frisbee, Cut Bank, Mont., for defendant.

JAMESON, District Judge.

This is an action to quiet title to the NW¼NE¼ of Section 36, Township 30 North, Range 8 West of the Montana Principal Meridian, in Glacier County, Montana. Plaintiff claims that it is the owner in fee simple and holds the land in trust for Mabel Pepion, an enrolled Indian of the Blackfeet Tribe. Defendants claim that John M. Angell is the owner of the surface and C. E. Frisbee the owner of the minerals, through tax deed to Glacier County, Montana, and conveyances by Glacier County to Frisbee and by Frisbee to Angell. Defendant Union Oil Company of California has filed a disclaimer of any interest or estate.

The facts are undisputed. On February 28th, 1918 a trust patent was issued and delivered to Mabel Pepion covering 324.30 acres of land, including the 40 acre tract here involved.[1] Following the issuance of trust patent and prior to December 12, 1918, the Secretary of Interior determined to his satisfaction that Mabel Pepion was competent and capable of managing her affairs and ordered a fee patent issued.[2] On December 12, 1918, the fee patent was issued to Mabel Pepion. On February 14, 1919, Mabel

---

[1] Trust patent was issued pursuant to Sections 331–334, 336 and 348, Title 25 U.S.C.A.; and the Blackfeet Allotment Act of March 1, 1907, 34 Stat. 1015.

[2] This determination was made pursuant to Section 349, Title 25 U.S.C.A.

Pepion executed a receipt therefor, and on March 14, 1919, the fee patent was recorded. Fee patent was issued without application of Mabel Pepion. On May 6, 1919 and May 17, 1919, Mabel Pepion executed and delivered mortgages as security for a loan of $1,500 covering lands included in the trust and fee patents which are not involved in this action. In these mortgages she covenanted that she was lawfully seized in fee simple of the mortgaged premises; that she had a good right to convey the same, and would pay taxes and assessments levied against the premises. The mortgages were subsequently foreclosed.

The lands involved in this action were never mortgaged or sold by Mabel Pepion. The County Assessor of Glacier County, Montana duly assessed the lands for 1920, and taxes were levied pursuant thereto. The taxes for 1920 in the amount of $7.25 were not paid, and on October 31, 1921, the land was sold to Glacier County, Montana at tax sale proceedings. Taxes for 1921 to 1925, and 1927 to 1929, inclusive, were levied and unpaid. Taxes for 1926 were paid. On March 28, 1930, a tax deed was issued to Glacier County, Montana.

On June 2, 1947, the lands were conveyed by Glacier County to C. E. Frisbee, one of the defendants. On November 18, 1948, the lands were conveyed by Frisbee to the defendant John M. Angell (also known as Mack Angell), subject to reservation by Frisbee of the oil, gas and other minerals.

On May 14, 1954, the Commissioner of Indian Affairs made an order cancelling the fee patent insofar as it covers the 40-acre tract involved in this action.[3] On June 2, 1954 a new trust patent was issued to Mabel Pepion, covering this tract.

Plaintiff contends (1) that the fee patent issued to Mabel Pepion was subject to cancellation insofar as it covered the 40-acre tract involved in this action by reason of the fact that it was a "forced patent", and that plaintiff is now the owner in fee simple and holds title in trust for Mabel Pepion; and (2) that the tax deed issued to Glacier County, Montana was invalid. Defendant contends (1) that the fee patent is valid and was not subject to cancellation; and (2) the fee patent being valid, this court has no jurisdiction to determine the validity of the tax deed.

3. The order cancelling the fee patent reads as follows:

Whereas, on December 12, 1918, fee patent No. 655769 was issued to Mabel Pepion an Indian of the Blackfeet Reservation, for her allotment described as Lot 6 of Section 1, T. 29 N., R. 8 W., and Lots 3 and 4 and the NW/4 NE/4 of Section 36, T. 30 N., R. 8 W., M. M., Montana, containing 324.30 acres, and

Whereas, the said fee patent was issued during the trust period without application by or consent of the said Mabel Pepion, and

Whereas, on March 13, 1939, by Order of the Secretary of the Interior upon application of the said Mabel Pepion, the said patent was cancelled as to Lot 6 of Section 1, T. 29 N., R. 8 W., and this land returned to a trust status, and

Whereas, the said Mabel Pepion has made application for the cancellation of said patent insofar as it affects the NW/4 NE/4 of Section 36, T. 30 N., R. 8 W., and has furnished satisfactory evidence that she neither sold nor mortgaged the land:

Now Therefore, acting under authority conferred upon the Secretary of the Interior by the Act of February 26, 1927 (44 Stat. 1247), as amended by the Act of February 21, 1931 (46 Stat. 1205), and delegated to me by Secretarial Order No. 2508 dated January 11, 1949, I hereby cancel said fee patent insofar as it affects the NW/4 NE/4 of Section 36, T. 30 N., R. 8 W., M. M., Montana. The Director, Bureau of Land Management is hereby requested to make the appropriate notation and entry hereof on the records of his office and to issue a new trust patent to Mabel Pepion for the NW/4 NE/4 of Section 36, T. 30 N., R. 8 W., M. M., Montana, containing 40 acres. The land shall be subject to any extensions of the trust made by Executive Order or otherwise or other allotments of members of the same tribe; and such lands shall have the same status as though the fee patent had never been issued as provided by the Act of February 26, 1927, as amended by the Act of February 21, 1931, supra.

The primary questions to be determined are whether Mabel Pepion consented to the issuance of the fee patent and the effect of 25 U.S.C.A. §§ 352a and 352b, the so-called Cancellation Acts. A consideration of both questions requires a brief history of the so-called "forced fee patents."

The Indian Allotment Act of February 8, 1887, 24 Stat. 388, 25 U.S.C.A. § 331 et seq., provided that the Secretary of the Interior issue patents (commonly termed "trust patents") to Indian wards under which the United States would hold the land for the use and benefit of the Indian for 25 years. A state may not tax lands held under such a trust patent. United States v. Rickert, 1903, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532. The Act of May 8, 1906, 34 Stat. 182, 25 U.S.C.A. § 349, amending the Indian Allotment Act, provided that the Secretary of the Interior could issue a patent in fee simple before the expiration of the period of the trust patent if "satisfied that any Indian allottee is competent and capable of managing his or her affairs."

At the time of the issuance of the fee patent to Mabel Pepion a liberal policy was being followed by the government pursuant to which many fee patents were issued where the Indians neither applied for nor consented to their issuance. Patents so issued are commonly termed "forced patents." The Ninth Circuit held as early as 1923 that the government could not deprive an Indian of immunity from taxation by issuing patents in fee without consent or acceptance by the Indians. United States v. Benewah County, Idaho, 9 Cir., 1923, 290 F. 628.

In 1927 Congress passed the first of the cancellation acts, the pertinent portion of which reads:

§ 352a. "The Secretary of the Interior is hereby authorized, in his discretion, to cancel any patent in fee simple issued to an Indian allottee * * * before the end of the period of trust * * * where such patent in fee simple was issued without the consent or an application therefor by the allottee * * *: Provided, That the patentee has not mortgaged or sold any part of the land described in such patent: Provided also, That upon cancellation of such patent in fee simple the land shall have the same status as though such fee patent had never been issued. (Feb. 26, 1927, c. 215, 44 Stat. 1247.)"

In United States v. Nez Perce County, Idaho, 9 Cir., 1938, 95 F.2d 232, 236, rehearing denied 9 Cir., 95 F.2d 238, the court stated that § 352a was "little more than a statutory recognition of the principle" announced in United States v. Benewah County, supra. The Nez Perce case involved an action to quiet title for an Indian ward and to recover taxes paid during the period for which a fee patent was outstanding. The court held that if the patentee had not consented to the issuance of the patent his land was immune to taxation, and remanded the case to the trial court to determine the question of consent.

In 1931 the second cancellation act was passed. It provides in part:

§ 352b. "Where patents in fee have been issued for Indian Allotments, during the trust period, without application by or consent of the patentees, and such patentees * * have sold a part of the land included in the patents, or have mortgaged the lands or any part thereof and such mortgages have been satisfied, such lands remaining undisposed of and without encumbrance by the patentees * * * may be given a trust patent status and the Secretary of the Interior is, on application of the allottee * * * hereby authorized, in his discretion, to cancel patents in fee so far as they cover such unsold lands not encumbered by mortgage, * * * and such lands shall have the same status as though such fee patents had never been issued: Provided, That this section and section 352a * * shall not apply where any such lands have been sold for unpaid taxes as-

sessed after the date of a mortgage or deed executed by the patentee * * * or sold in execution of a judgment for debt incurred after date of such mortgage or deed, and the period of redemption has expired. (Feb. 26, 1927, c. 215, § 2, as added Feb. 21, 1931, c. 271, 46 Stat. 1205.)" (Emphasis supplied.)

■ Plaintiff contends that the phrase "any such lands" as used in the proviso to Section 352b refers only to lands which have been mortgaged and subsequently sold for taxes. In my opinion this proviso cannot be so interpreted. The words "such lands" are used four times in § 352b. The first two times they expressly refer to the portion of the patent land remaining unsold and unencumbered. The third time they are used without a modifying phrase, but it is obvious that they refer to unsold and unencumbered land for which new trust patents have been issued. The only reasonable conclusion is that the fourth use of the phrase "such lands" in the proviso, likewise refers to the unsold and unencumbered portion of the fee patent lands. Moreover, the proviso refers to lands sold for taxes assessed after the date of a mortgage "or deed." Under plaintiff's construction that "such lands" refers to

lands which had been mortgaged and then sold for taxes, there would be no reason to mention a deed. In addition, those lands or portions thereof which have been sold or encumbered are already non-cancelable under the provisions of Section 352a.

■ Plaintiff contends further that the legislative history of Section 352a and 352b shows an intention of Congress to allow the Indians to restore all or any part of their forced patent lands to a trust-patent status, even if the lands had been sold for taxes, where the lands sold for taxes had never been mortgaged.[4] I find nothing in the legislative history to manifest a Congressional intent that Section 352b should be limited to lands which had been mortgaged and then sold for taxes. On the contrary, it seems clear that Congress enacted 352b to allow the restoration of unsold and unencumbered land to trust status in cases where a portion of the land under patent had been sold or mortgaged, but added the proviso to prevent the restoration of such unsold and unencumbered lands where rights of third parties had intervened because of tax sales or execution sale.

Confirmation of this conclusion is found in an opinion written by Solicitor Finney of the Department of Interior,

4. Pertinent portions of the legislative history of Sec. 352b include:

"Placing a voluntary encumbrance upon, or disposing of land so patented must in law be considered as an acceptance of the fee patent and a waiver of the tax exempt provisions of a trust patent, but where forced patent has neither been encumbered nor sold by the patentee, such patent ought to be cancelled on application made to the Secretary of the Interior * * *.

"Taxes or even tax deeds cannot be said to be encumbrances of a character to prevent cancellation as these impositions are not voluntary."

"Your committee was of the opinion that where land covered by such illegally issued patent had been either mortgaged or sold by the Indian to whom the patent was issued that such mortgage or sale, as the case might be, would amount to an acceptance of the patent and that he could not be heard to say that such

patent had been improperly issued. * * *"

"It should be observed that this bill goes further than said Act of February 26, 1927 in that it permits such portions of lands for which a patent in fee had been issued without the consent of the grantee which still remained unencumbered and which have not been conveyed to be restricted to their trust patent status. * * *

"The bill, as amended, also permits the Secretary of the Interior to cancel patents in fee and restore the trust-patent status of the lands involved in cases where such lands have been mortgaged when such mortgage has been discharged, except in those cases where the lands may have been sold for unpaid taxes assessed after the date of the encumbrance." Report No. 1595, 71st Cong. 3rd Session, from Committee on Indian Affairs filed in the Senate February 12, 1931, recommending passage of Act now Sec. 352b, Title 25 U.S.C.A.

dated February 18, 1933, reported in 54 I.D. 160:

"The object of both statutes, of course, was to correct or remedy the administrative error of casting the fee title upon the Indian without his application or consent, by authorizing the Secretary to cancel the patent so issued. The authority to cancel, however, is not absolute. Rights acquired in the patented lands by purchase or mortgage could not, of course, be invaded or taken away without due process of law, and Congress was careful to protect such rights from impairment by placing a limitation upon the Secretary's authority. This was done in the original act by withholding the power conferred in all cases where the patentee had 'mortgaged or sold any part of the land.' Likewise in the supplemental act the authority to cancel extends only to 'unsold lands not encumbered by mortgage,' with the further limitation that the act should not apply 'where any such lands have been sold for unpaid taxes assessed after the date of a mortgage or deed executed by the patentee * * *'."

█ Did Mabel Pepion consent to the issuance of the fee patent? Consent depends upon the facts and circumstances appearing in evidence in the particular case. United States v. Nez Perce County, 9 Cir., 1938, 95 F.2d 232, rehearing denied, 9 Cir., 95 F.2d 238; Board of Com'rs of Caddo County, Okl. v. United States, 10 Cir., 1936, 87 F.2d 55; United States v. Glacier County, D.C.Mont.1947, 74 F.Supp. 745. While a mortgage or deed conveying a portion of the land does not in itself establish consent, it may constitute evidence that the patent had previously been accepted. Glacier County v. Frisbee, 1945, 117 Mont. 578, 164 P.2d 171.

In this case the patentee signed a receipt for the patent, witnessed by her husband. The patent was recorded the following month. Approximately two months later the patentee executed two mortgages covering 240 of the 324 acres covered by the patent. The mortgages did not cover the 40-acre tract here involved. The taxes assessed against this tract were paid for 1926, but it does not appear by whom they were paid. Taxes were assessed, but not paid, for the years 1919 to 1925 and 1927 to 1929. The county took a tax deed in 1930.

Mabel Pepion testified that her husband was a rancher and when the fee patent was issued they were raising cattle and horses and farming; that she did not apply for the fee patent and did not want it because she knew she could not pay the taxes; that she received a letter from the agency at Browning telling her that she could call for her patent; that she did so, signed the receipt, and later the patent was mailed to her; that she kept the patent and her husband wanted to mortgage the land; that he handled all the business and she "had nothing to say"; that she signed the mortgage; that her husband must have recorded the patent, but she didn't; that she did not apply for cancellation of the fee patent as to the 40 acre tract when she applied for cancellation as to another tract in 1939, because her husband told her that the government held a lien on it and she thought "she did not have to pay taxes on it, being that the government held a lien"; that she thought she owned it until it was taken for taxes; that she did not recall receiving any tax notices for this 40 acre tract.

The questions here involved were considered by the Honorable Charles N. Pray in a very similar case,—United States v. Glacier County, D.C.Mont.1947, 74 F.Supp. 745, 748. There the United States brought an action to cancel a fee patent issued to Florence Samples (Mrs. Hall) and to quiet title to the portion of the land remaining unsold. The evidence showed that the patentee had not applied for the patent; that she had sold 80 of the 320 acres included in the patent; that the deed and the patent were recorded on the same day; that patentee had declared the land for assessment and had signed the assessment return; that

the 1919 taxes were paid, but that subsequent taxes remained unpaid; that a tax deed was issued to Glacier County in 1927; that in 1930 patentee applied for cancellation of the patent as to the portion remaining unsold which application was refused; and that the land was sold in 1941 to defendant Manley. The Court noted that patentee was of one-eighth Indian blood, that she had been married three times and each time to a white man, that her "appearance on the witness stand was that of an intelligent white person of good understanding" and that her opportunities for an education "would seem to rate favorably with the average white person in comparable circumstances." The Court found for the defendant.

In holding that Mrs. Hall had consented to the issuance of the patent in its entirety, Judge Pray said:

"She sold 80 acres of her land for $800, which she admitted was a fair price for the land; she conveyed the land by warranty deed which she could not have done without accepting and consenting to the patent as an indispensable basis of her act for such conveyance. In other words, she warranted the title and said by her warranty that she had good title to the land and a legal right to convey it.

"It is not clear how the Government can contend that Mrs. Hall did not consent to the patent to the extent of 240 acres, when the patent conveyed 320 acres. If she did not apply for the patent or consent to its issuance, how could she convey part of the land by warranty deed and consent to the patent to that extent and repudiate the patent as to the remainder of the land; the inconsistency is so great that the court will not attempt to solve it, and counsel for the Government have not done so, nor have they cited any authority in point to sustain their position. Mrs. Hall either consented to the issuance of the patent or she did not do so—the patent is an indivisible entity and can not be held good as to part of the tract of land conveyed and bad as to the remainder; it conveyed to Mrs. Hall her allotment in fee simple consisting of 320 acres."

Counsel for plaintiff argue that this case is distinguishable on the facts from United States v. Glacier County, supra. It is true in that case the court relied in part upon the fact that the allottee submitted voluntarily to taxation and paid the first tax assessed against the land, whereas in this case the only year for which taxes were paid was 1926 and it does not appear who paid them. On the other hand, in this case Mrs. Pepion executed a receipt for the patent and presumably permitted her husband to record it.

Counsel argue further that Mrs. Hall "apparently impressed Judge Pray as being to all intents and purposes an intelligent and informed white person and, in that respect, not comparable to the present case where Mrs. Pepion was a reservation Indian, mother and wife during the period of time under consideration." On the witness stand, however, Mrs. Pepion gave the impression of being of at least average intelligence. From a careful review of her testimony, it appears that her recollection was clear regarding circumstances surrounding the issuance of the patent forty years ago. It is not so clear regarding subsequent events. With reference to receipt of tax notices she testified on cross-examination:

"Q. Mrs. Pepion, during this period of time didn't you get tax notices from Glacier County? A. No, sir. Oh, well, I do not know, as I say my husband did all the business. I did not do nothing."

With reference to receipt of notice of application for tax deed, paragraph 9 of the Agreed Statement of Facts contains an affidavit of mailing to Mabel Pepion, Valier, Montana, on December 28, 1929. On January 24, 1930, Mrs. Pepion, by letter addressed to the Postmaster at Valier, Montana, directed delivery of her

mail to Mrs. Mack Angell. The Postmaster delivered two registered letters to Mrs. Angell, and Mrs. Pepion, on the same date, signed a notation reading, "The two registered letters referred to where notices of some land of mine sold for taxes." This is hardly consistent with her testimony that she thought she owned the tract in question until she learned that it was "taken for taxes." This testimony was in partial explanation of her failure to include this tract in application made in 1939 to cancel the patent with respect to another forty-acre tract. Altogether, it is my impression from Mrs. Pepion's testimony that her recollection was clear on matters favorable to her position, but faulty where the facts do not support her contentions.

Is the Court precluded from considering the question of consent because of the determination of the Department of Interior? Plaintiff contends that the determination of the Commissioner that Mrs. Pepion did not consent to the issuance of the patent is controlling on this Court since there is no showing that the Commissioner acted "improperly or contrary to law." Paragraph 15 of the stipulation recites an order of the Commissioner of Indian Affairs of May 14, 1954 cancelling the fee patent in part. The order is set forth in footnote 3.

Plaintiff quotes from 42 Am.Jur. 610, Public Administrative Law, § 209, which sets forth the instances where a court may review administrative determinations including those where "the determination is without or in excess of the statutory powers and jurisdiction of the administrative authority" and where the determination is made "in disregard of the fundamental rules of due process of law * * * as where made without adequate notice, fair hearing, and opportunity for the aggrieved party to present evidence."

██ In the absence of express authority granted by statute, the Secretary of Interior has no power to cancel a patent which has been regularly issued and delivered. United States v. Getzelman, 10 Cir., 1937, 89 F.2d 531. The author-

ity for the order of cancellation is 352a and 352b and, as hereinafter set forth, those sections do not provide authority for cancellation in the instant case, and the determination accordingly was "in excess of the statutory powers" of the Department of Interior. Further, defendant had acquired a tax deed to the land in question at the time that the order of cancellation had been made and was not given notice, a hearing or an opportunity to present evidence with respect to the determination which deprived him of his interest in the property. Therefore, this Court, in my opinion, has full powers to review the determination of the Department of Interior with respect to the cancellation of the fee patent. See also United States v. Glacier County, D.C.Mont.1945, 62 F.Supp. 27; Id., D.C.Mont.1947, 74 F.Supp. 745; United States v. Nez Perce County, Idaho, 9 Cir., 1938, 95 F.2d 232, rehearing denied 9 Cir., 1938, 95 F.2d 238.

I cannot distinguish the facts in this case from those in United States v. Glacier County, supra. In my opinion, Mrs. Pepion must be held to have consented to the issuance of the fee patent.

Assuming, arguendo, that Mrs. Pepion did not consent to the fee patent, is it subject to cancellation under Section 352b? In United States v. Glacier County, supra, Judge Pray also considered Sections 352a and 352b, and their legislative history, and concluded:

"There is a provision in Section 352b of Title 25 U.S.C.A. which would seem to apply precisely to the facts found in this case, which is in the following words: 'Provided, That this section and section 352a of this title shall not apply where any such lands have been sold for unpaid taxes assessed after the date of a mortgage or deed executed by the patentee * * *'

"It appears that after the conveyance of 80 acres of the land included in the patent, the remainder of the land, so included, was sold for unpaid taxes assessed after the date of the deed. It would seem that the

892

Secretary of the Interior would have no authority to cancel the fee patent in this case, but would be governed entirely by the statutes above quoted, and that this court would also be obliged to observe the same law." 74 F.Supp. at page 749.

Plaintiff contends that Judge Pray's decision is not controlling because there the sole application for an order cancelling the fee patent was made in 1930 (which application was denied), before the enactment of § 352b, and therefore the application of § 352b was not properly before the court. However, it is apparent from Judge Pray's opinion that he fully considered both sections 352a and 352b and concluded that the Secretary of the Interior had no authority to cancel the fee patent.

Two constructions of Section 352a and 352b are possible: (1) That under Section 352b the patentee may accept and consent in part and reject in part, i. e., accept the patent with respect to the portion of the lands sold or encumbered, and reject as to the remaining lands; or (2) that these sections are applicable only where there is no consent, and under 352a the Secretary of Interior may cancel the patent where the patentee has not mortgaged or sold any part of the land, and under Section 352b may cancel the patent insofar as it covers lands which are unsold and unencumbered, except where they have been sold for unpaid taxes after the date of a mortgage or deed executed by the patentee or sold in execution of a judgment for debt incurred after the date of such mortgage or deed. Under this construction, even in the absence of consent, a patent may not be cancelled as to any lands which have been sold or are encumbered.

Judge Pray apparently adopted the second construction, holding in effect (1)

that Mrs. Hall had consented to the issuance of the patent as to all of the land and could not consent with respect to the portion sold and repudiate as to the remainder; and (2), that even if there were no consent, the patent was not subject to cancellation as to the remaining lands by reason of the proviso in Section 352b, since the remaining lands were sold for unpaid taxes assessed after the date of the deed.

In my opinion Judge Pray's conclusion was correct and is applicable to the instant case. It is held that Mrs. Pepion consented to the issuance of the fee patent; and, even in the absence of consent, that the patent is not subject to cancellation by reason of the proviso in Section 352b.

■ It is plaintiff's position that "sold for unpaid taxes" must be interpreted to mean that not only must the land have been sold at a tax sale valid under state law, but that the tax deed proceedings be valid in all respects. The parties stipulated that the subject land was "struck off and sold to Glacier County, Montana, at tax sale proceedings * * *." Plaintiff has not contended that the taxing authority of the State had not been regularly exercised, that the collection of the taxes was not in conformity with state procedure, or that the "tax sale" proceedings were invalid, but rather has contested the "tax deed" proceedings. I am of the opinion that the phrase "sold for unpaid taxes" refers to a tax sale and is not intended to mean that a tax deed must have been issued which would survive all attacks upon it under state law. The stipulation that the land was sold for taxes is sufficient to bring the case under 352b. Therefore, a determination here of the validity of the tax deed is unnecessary.